## A08A2425. WILLIAMS v. THE STATE.
### (670 SE2d 828)

ELLINGTON, Judge.

A Clayton County jury found Christopher Eugene Williams guilty of burglary, OCGA § 16-7-1 (a); kidnapping, OCGA § 16-5-40 (a); armed robbery, OCGA § 16-8-41 (a); rape, OCGA § 16-6-1; possession of a weapon during the commission of a crime, OCGA § 16-11-106 (b) (1); two counts of aggravated assault, OCGA § 16-5-21 (a); and false imprisonment, OCGA § 16-5-41 (a). Williams appeals from the judgment of conviction, raising the general grounds and contending the court erred in failing to merge several of his convictions. Finding no error, we affirm.

1. Williams challenges the sufficiency of the evidence in two respects. First, he contends that the evidence adduced is insufficient to convict him of any of the crimes charged because the identification testimony of his accomplice, Damon Heyward, was not sufficiently corroborated. Second, he contends the evidence adduced on the armed robbery charge was insufficient to support his convictions beyond a reasonable doubt.

When a criminal defendant challenges the sufficiency of the evidence supporting his or her conviction, "the relevant question is

whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Citation omitted; emphasis in original). *Jackson v. Virginia*, 443 U. S. 307, 318-319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979). The jury, not this Court, resolves conflicts in the testimony, weighs the evidence, and draws reasonable inferences from basic facts to ultimate facts. Id. "As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld." (Citation and punctuation omitted.) *Miller v. State*, 273 Ga. 831, 832 (546 SE2d 524) (2001). Viewed in this light, the record reveals the following facts.

During the early afternoon of November 28, 2006, Damon Heyward and the defendant, Christopher Williams, broke into a neighbor's home through the kitchen window. The home, located on Channing Street in Jonesboro, belonged to Somphone Vongvilay, who was away at work when the burglary occurred. As the defendants were breaking in, the Vongvilays' 18-year-old female house guest was descending the stairs from her bedroom and walking toward the kitchen with her puppy. The victim testified that she encountered Heyward and Williams, who appeared to be "high school guys" at the bottom of the steps. She froze in fear when she saw them. Williams, who was wearing a blue bandana as a face mask, told the victim not to move, and then he hit her on the head with a handgun. After he struck the victim, Williams grabbed her and forced her upstairs and into a bedroom on the right side of the second floor hallway.

Once in that room, Williams held the victim at gunpoint and demanded money and guns while Heyward stole things from the room and stuffed them in his backpack. Heyward, who testified against Williams at trial, admitted breaking into the house with Williams and taking items from the house, including a rifle, cell phones, electronics, liquor, jewelry, and a suitcase that he used to carry away many of the stolen items. He also testified that Williams, who had the handgun, moved the victim from room to room in the house.

After taking items from the first room, Williams forced the victim into the hallway, where he began touching her and fondling her. The victim asked Williams to stop, but he continued and threatened to kill her. At this point, Heyward threatened to kill the victim's puppy, so the victim grabbed the dog and held on to it. Williams forced the victim into the room across the hall, the Vongvilay's prayer room, which contained many small Buddha figurines. Heyward stole the figurines from the prayer room and searched the house for more valuables.

In the prayer room, Williams held the gun to the victim's head, threatened to kill her, and then forcibly removed her pajamas. He forced the victim to bend forward, and he had intercourse with her against her will from behind. Heyward testified that he saw Williams rape the victim from behind. During the rape, Williams' bandana fell off, and the victim saw his face. When Williams was finished, he wiped the victim's vaginal area off with a towel, and forced her into a closet with her puppy. The victim reached for her clothes, but was only able to grab her pajama bottoms. Williams threatened to kill the victim if she did not stay in the closet. Williams tied the closet's bi-fold doors closed with a cord, and then he and Heyward finished gathering their stolen goods, including the victim's pajama shirt, and left the house through the back door. After about 25 minutes, the victim opened the closet and ran to a neighbor's house for help.

As the victim ran into Channing Street, she saw a neighbor driving away from her home. The neighbor lived just around the corner on Crown Street, an intersecting dead-end street. She testified that just before she left her home at around 2:00 p.m. that day, she saw two boys come from the back of her house and cross the driveway next door. One was dragging what she thought was a trash can and the other was carrying a rifle. The two walked toward the dead-end section of Crown Court. Heyward, who also lived in the neighborhood, testified that he saw the neighbor look at him as he was walking toward his home on Crown Street. Heyward left the stolen goods in his room at his mother's house, and then he and Williams went out.

Heyward's mother, Cherice Pickney, testified that when she got home from work that evening she saw camera crews and police at the Vongvilay home. She also discovered stolen goods in her son's room, including a rifle, a suitcase, DVDs, liquor, clothing, and electronic equipment. When confronted by his mother, Heyward said that he was holding the things for a friend, but he started crying when his mother told him she did not believe him. Pickney also testified that Williams telephoned her house three times that evening, but that she would not let him speak to Heyward. Williams then appeared at her house and said that "somebody" would be coming to remove the items, but Pickney told Williams that it was too late, that the police were on their way. After Williams left, Pickney walked up to the victim's house and asked a detective to come retrieve the stolen items.

The police photographed the items found in Heyward's room, including a blue bandana, a rifle, Buddha figurines, a knife with the name "Vongvilay" engraved on it, a plastic cookie jar with the victim's name on it, the victim's pajama shirt, luggage, liquor, DVDs, electronics, and the loaded .38 caliber revolver Williams used in the

assaults. Heyward gave the police a statement that incriminated Williams in the burglary and rape. The victim picked Williams out of a photographic lineup, and she identified him at trial as her rapist. At trial, the victim identified her pajama shirt, and Mr. Vongvilay identified the items stolen from his home. Finally, the Georgia Bureau of Investigation crime lab tested the stains on the victim's pajama shirt and on the blue bandana for bodily fluids. Stains on both items were positive for the presence of sperm and seminal fluid, and the stains contained DNA that matched the DNA samples taken from both the victim and Williams.

(a) To sustain a conviction in a felony case based solely upon the testimony of an accomplice, "the testimony of the accomplice must be corroborated by independent evidence tending to connect the accused with the crime or leading to an inference that the accused is guilty." (Punctuation and footnote omitted.) *Williams v. State*, 280 Ga. 584, 585-586 (1) (630 SE2d 370) (2006). See OCGA § 24-4-8 (in "felony cases where the only witness is an accomplice, the testimony of a single witness is not sufficient [to establish a fact]"). "Slight evidence from an extraneous source identifying the accused as a participator in the criminal act will be sufficient corroboration of the accomplice to support a verdict." (Punctuation and footnote omitted.) *Williams v. State*, 280 Ga. at 586 (1).

In this case, the State adduced ample evidence corroborating Heyward's identification testimony. The victim saw Williams' face during the rape, picked Williams out of a photographic lineup, and identified him at trial as her attacker. Heyward's testimony was also corroborated by the victim's testimony in many respects, including similarities in the timing of events and in details like the presence of the victim's puppy. Moreover, Williams' DNA was found on the victim's night shirt and the bandana that he used as a mask. This evidence sufficiently corroborates Heyward's testimony and identifies Williams as the victim's rapist. See *Williams v. State*, 280 Ga. at 386 (1).

(b) Williams argues that because the evidence does not show when or how he removed the victim's pajama shirt[1] from the room, there is no evidence that it was taken from the victim's immediate presence by use of an offensive weapon and, thus, the armed robbery conviction cannot stand. We disagree. OCGA § 16-8-41 (a) provides, in relevant part, that the theft element of an armed robbery is committed by the taking of "property of another from the person or

---

[1] The indictment avers that Williams committed the armed robbery when, "with intent to commit theft did take the clothing, the property of [the victim], from her immediate presence by use of a firearm[.]"

the immediate presence of another." As the Supreme Court of Georgia has explained,

> [a]lthough the victim's "person" and his "immediate presence" are separated by the word "or," the former has always been deemed to include the latter for purposes of proving the elements of a robbery. The meaning of this legal phrase is, not that the taking must necessarily be from the actual contact of the body, but if it is from under the personal protection that will suffice. Within this doctrine, the person may be deemed to protect all things belonging to the individual, within a distance, not easily defined, over which the influence of the personal presence extends. In cases of this type, all of the victim's property is, in contemplation of law, upon the person of the owner, which is, at the time of taking, in the immediate presence of the owner, or is so near at hand, or stored in such position, that, at the time of taking, it is under the immediate personal protection of the owner. If the goods are in that condition, then they are, within the contemplation of the law, upon the person of the owner.

(Citations and punctuation omitted.) *Felder v. State*, 270 Ga. 641, 642-643 (2) (514 SE2d 416) (1999).

Williams forcibly removed the victim's pajama shirt from her body by use of a handgun. That Williams had the intent to steal it, and that he took it, may be inferred from the fact that the pajama shirt was later found with the other stolen goods in Heyward's room. Whether he or Heyward actually took the shirt is immaterial, as Williams is legally responsible for the acts of his partner in crime.[2] While the victim did not see Williams pick up the pajama shirt and take it from the room, she was aware that Williams and Heyward were stealing things from the room generally. And given Williams' previous use of a handgun and threats to kill her if she did not remain in the closet, the victim could reasonably apprehend that Williams still had the handgun as he continued taking things from the room. See *Culver v. State*, 230 Ga. App. 224, 231 (6) (496 SE2d 292) (1998) (although rape victim who was ordered to remain on the

---

[2] OCGA § 16-2-20 (a) provides: "Every person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime." The pertinent subsections of OCGA § 16-2-20 are (b) (3) and (4), which read: "A person is concerned in the commission of a crime only if he . . . (3) Intentionally aids or abets in the commission of the crime; or (4) Intentionally advises, encourages, hires, counsels, or procures another to commit the crime." Heyward testified that he and Williams both committed the thefts.

floor with her face covered could not see her armed assailant steal $600 from her purse, evidence was sufficient to support conviction for armed robbery). Thus, the evidence adduced was sufficient to support Williams' conviction for the armed robbery of the victim's pajama shirt beyond a reasonable doubt. See id.

2. Williams contends the trial court should have entered an order merging the following crimes: (a) Count 9, false imprisonment, into Count 2, kidnapping; (b) Count 7, aggravated assault with intent to rape, into Count 5, rape; and (c) Count 8, aggravated assault, into Count 2, kidnapping.

(a) As charged in the indictment and as proven by the evidence adduced, the false imprisonment[3] occurred when Williams forced the victim into the prayer room closet after he raped her, bound the closet doors closed with a cord, and ordered the victim under threat of death to remain there until he left. The kidnapping occurred and was complete prior to that, when he forced the victim up the stairs and into the bedroom on the right hand side of the second floor hallway and held her there against her will.[4] Because the kidnapping and false imprisonment offenses were proven by different facts, the trial court did not err in holding that the crimes did not merge. See *Chatman v. State*, 283 Ga. App. 673, 675 (3) (642 SE2d 361) (2007) ("If one crime is complete before the other takes place, the two crimes do not merge.").

(b) The trial court did not err in failing to merge the conviction for aggravated assault with intent to rape[5] into the conviction for rape.[6] The record shows that Williams, while in the hallway, touched and fondled the victim while threatening to kill her. He was armed with a handgun at the time. Moments later, he forced the victim into the prayer room across the hall, where he pointed the gun at the victim, forcibly undressed her, and then proceeded to rape her. The acts in the hallway "were separate and distinct acts of force and intimidation outside that necessary to accomplish the rape. Thus, the jury was authorized to find [Williams] guilty of both rape and

---

[3] "A person commits the offense of false imprisonment when, in violation of the personal liberty of another, he arrests, confines, or detains such person without legal authority." OCGA § 16-5-41 (a).

[4] "A person commits the offense of kidnapping when he abducts or steals away any person without lawful authority or warrant and holds such person against [her] will." OCGA § 16-5-40 (a).

[5] "A person commits the offense of aggravated assault when he or she assaults: (1) With intent to murder, to rape, or to rob." OCGA § 16-5-21 (a) (1). The underlying simple assault can occur, as it did here, when the defendant "[c]ommits an act which places another in reasonable apprehension of immediately receiving a violent injury." OCGA § 16-5-20 (a) (2).

[6] "A person commits the offense of rape when he has carnal knowledge of: (1) A female forcibly and against her will." OCGA § 16-6-1 (a) (1).

aggravated assault with [intent to rape] under the circumstances." (Citations omitted.) *Culver v. State*, 230 Ga. App. at 230-231 (5).

(c) The trial court did not err in failing to merge the aggravated assault conviction,[7] which was based upon Williams striking the victim with a pistol, with the kidnapping conviction, which was based upon his forcing the victim upstairs. The record shows that the assault occurred prior to the kidnapping. Further, assault was not necessary to accomplish the kidnapping. Consequently, the crimes do not merge as a matter of fact. See *Maddox v. State*, 277 Ga. App. 580, 581 (627 SE2d 166) (2006) (where kidnappings occurred independently of an aggravated assault (pistol-whipping), the offenses did not merge).

Because Williams has not shown that any of his convictions merge, we find no error.

*Judgment affirmed. Blackburn, P. J., and Miller, J., concur.*

DECIDED NOVEMBER 26, 2008.

*Patricia F. Angeli*, for appellant.
*Jewel C. Scott, District Attorney*, for appellee.

---

[7] A person commits the offense of aggravated assault when he assaults "[w]ith a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury." OCGA § 16-5-21 (a) (2).