NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 09-2916

———

UNITED STATES OF AMERICA

v.

MALCOLM McMILLER,
also known as SHAKE

Malcolm McMiller,
                              Appellant

———

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Crim. No. 2-00-cr-00069-001)
District Judge: Hon. Alan N. Bloch

———

Submitted Under Third Circuit LAR 34.1(a)
April 15, 2010

Before: SLOVITER and HARDIMAN, Circuit Judges, and
POLLAK[*], District Judge

(Filed: April 19, 2010)

———

---

[*] Hon. Louis H. Pollak, Senior Judge, United States District
Court for the Eastern District of Pennsylvania, sitting by
designation.

OPINION

SLOVITER, *Circuit Judge*.

Appellant Malcolm McMiller was arrested for false imprisonment and battery in Georgia while serving a five-year term of supervised release after serving a prison sentence for possession with intent to distribute crack cocaine. Upon learning of McMiller's arrest, the United States Probation Office in the Western District of Pennsylvania, where he was convicted of his crack offense, notified the District Court that it had reason to believe McMiller had violated a condition of his supervised release. At the revocation hearing held in the Western District of Pennsylvania, McMiller denied the allegations. The District Court found that McMiller had committed the offenses of false imprisonment and battery, both in violation of Georgia law. The District Court also found that the offense of false imprisonment under Georgia law was a "crime of violence" and thus a Grade A violation under § 7B1.1 of the United States Sentencing Guidelines. As a result, the District Court revoked McMiller's supervised release and sentenced him to a prison term of fifty-one months.

McMiller contends that the District Court erred both in denominating false imprisonment under Georgia law as a crime of violence and in holding that the evidence supported the finding that he was guilty of that offense. McMiller also contends that the District Court failed to employ a categorical approach and improperly considered his conduct in deciding whether false imprisonment is a crime of violence. We are not

persuaded.

## I. Factual Background

After McMiller was released from prison, he moved to Georgia to reside with his family. According to a police report, McMiller confronted his wife, Marlo McMiller ("Marlo"), at her workplace about his suspicions of her infidelity. The police report stated that McMiller refused to let Marlo leave her office, where he "spent the next hour and fifteen minutes assaulting her by punching, kicking, spitting on, and choking her." Supp. App. at 2. The report also stated that thereafter McMiller "put [Marlo] in the car, and they drove around as he continued to yell and hit her." Supp. App. at 2. Eventually, Marlo convinced McMiller to let her use the restroom at a public park and then used a passerby's mobile telephone to phone the police, at which point McMiller fled.

McMiller was charged with false imprisonment and battery. The Probation Office in the Western District of Pennsylvania then submitted a Petition on Supervised Release notifying the District Court that it had reason to believe that McMiller had violated the term of his supervised release requiring that he "shall not commit another federal, state, or local crime." Supp. App. at 1.

At the revocation hearing, after McMiller denied the allegations that he had physically abused his wife and kept her both in her office and in the car against her will, the Government put on the testimony of the officer of the Columbus, Georgia, Police Department who had come to Marlo's assistance. The District Court concluded that

3

McMiller "confined or detained [Marlo] without legal authority and in violation of her personal liberty when . . . he locked the door to her office, not allowing her to leave, and began punching and kicking her" and when "he took her in his automobile and continued to verbally and physically assault her." App. at 37b.

The District Court further found that false imprisonment under Georgia law is a "crime of violence," reasoning that "false imprisonment otherwise involves conduct that presents a serious potential risk of physical injury to another." App. at 38b (citing U.S.S.G. § 4B1.2(a)). In light of its finding, the District Court designated McMiller's violation of his supervised release conditions as "Grade A," the most serious category of violation under U.S.S.G. § 7B1.1. It revoked McMiller's supervised release and sentenced him to a term of imprisonment of fifty-one months, the lowest sentence under the relevant Guidelines range. McMiller appeals.[1]

## II. Discussion

McMiller states that we should "review de novo whether a particular crime constitutes a 'crime of violence.'" Appellant's Br. at 2. The Government, on the other hand, argues that because McMiller did not object to the District Court's finding that false imprisonment was a crime of violence, "it is McMiller's burden to establish plain error."

---

[1] The District Court had jurisdiction to issue an order revoking McMiller's term of supervised release under 18 U.S.C. §§ 3231 and 3583(e)(3). This court has jurisdiction to decide the appeal pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a)(3).

Appellee's Br. at 3. We need not resolve this dispute because the District Court did not err, much less plainly so, and our standard of review has no bearing on the outcome of this appeal.

McMiller argues that the District Court erred in holding that false imprisonment under Georgia law is a crime of violence and therefore a Grade A violation of McMiller's supervised release conditions. Appellant's Br. at 10. Under the Sentencing Guidelines, the term "crime of violence" means:

> any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that . . . (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another.*

U.S.S.G. § 4B1.2(a) (emphasis added); *see also* U.S.S.G. § 7B1.1 cmt. n.2 (explaining that the definition of "crime of violence" for purposes of classifying violations of supervised release conditions is coextensive with the meaning of that phrase as provided in § 4B1.2). For our purposes today, we must focus on the portion of § 4B1.2(a) italicized above, which has been denominated the "residual clause." *United States v. Johnson*, 587 F.3d 203, 207 (3d Cir. 2009) (citation omitted).

"We generally use a categorical approach to classify a prior conviction." *Id.* at 208 (citing *Taylor v. United States*, 495 U.S. 575, 600-02 (1990)). "Under that approach, a court must ask 'whether the elements of the offense are of the type that would justify its inclusion within the residual [clause], without inquiring into the specific conduct of this

5

particular offender.'" *Id.* (quoting *James v. United States*, 550 U.S. 192, 202 (2007)) (emphasis omitted). To determine whether a conviction under Georgia's false imprisonment statute categorically qualifies as a crime of violence, we begin by analyzing the statutory text. *Johnson*, 587 F.3d at 208.

The pertinent statutory definition of "False Imprisonment" is as follows:

A person commits the offense of false imprisonment when, in violation of the personal liberty of another, he arrests, confines, or detains such person without legal authority.

Ga. Code Ann. § 16-5-41(a).

Under the Supreme Court's opinion in *Begay v. United States*, 128 S. Ct. 1581 (2008), a crime of violence typically requires purposeful conduct. *See Johnson*, 587 F.3d at 214 (finding that "in light of the government's representation that it does not seek to define" convictions as crimes of violence "to the extent [they are] premised on reckless conduct," only purposeful, knowing conduct can suffice).

Examination of the Georgia statute leads us to conclude that false imprisonment under Georgia law does typically require purposeful conduct. The words "arrests, confines, [and] detains" all imply knowing, intentional acts, rather than recklessness or negligence. *See* Ga. Code Ann. § 16-5-41(a). Indeed, McMiller does not assert that reckless or negligent conduct could render an individual guilty under Georgia's false imprisonment statute.

At the next step under *Begay*, we must determine whether false imprisonment

6

presents a serious potential risk of physical injury to someone other than the perpetrator. *See* 128 S. Ct. at 1585. Again, we resolve that question in the affirmative. As the District Court noted, "[w]hile the use of physical force is not an element of this crime, false imprisonment . . . involves conduct that presents a serious potential risk of physical injury to another [because] . . . [e]ven if [a] person is not held by force, there is a strong likelihood that a person would use force to resist being held and physical injury would ensue." App. at 38b. Indeed, Georgia cases show that convictions under Georgia's false imprisonment statute involve scenarios in which the offense conduct poses a serious risk of potential injury because, just as the District Court found, the victim often uses physical force in an attempt to resist confinement. *See Reynolds v. State*, 497 S.E.2d 580, 583 (Ga. Ct. App. 1998) (perpetrator induced victim to allow him into her car and then made unwanted sexual advances toward her and impeded her egress from the car, which led the victim to "fight[ ] to escape"). Moreover, most Georgia false imprisonment cases involve far more violent and aggressive behavior. *See, e.g.*, *Pierce v. State*, 687 S.E.2d 185, 190 (Ga. Ct. App. 2009) (defendant "grabbed the victim by the hair and dragged her from room to room . . . while beating her"); *Williams v. State*, 670 S.E.2d 828, 832-33 (Ga. Ct. App. 2008) (perpetrator raped victim in her home then forced her into a closet, threatened to kill her if she did not stay in the closet, and tied the closet's doors with a cord).

However, the *Begay* Court clarified that not "every crime that 'presents a serious potential risk of physical injury to another'" qualifies as a crime of violence. 128 S. Ct. at

7

1585 (citation and emphasis omitted). Rather, the crime must be "similar, in kind as well as in degree of risk posed," to the enumerated offenses. *Id.* *Begay* further explained that an offense is similar in kind to the enumerated offenses if it "typically involve[s] purposeful, 'violent,' and 'aggressive' conduct. . . ." *Id.* at 1586. For many of the reasons stated above, we conclude that the typical false imprisonment conviction in Georgia courts is based upon purposeful, violent, and aggressive conduct.

McMiller argues that irrespective of whether false imprisonment under Georgia law constitutes a crime of violence, the District Court "did not follow [the categorical approach] when it specifically used the facts underlying the offense . . . ." Appellant's Br. at 17. We disagree. The "formal categorical approach" requires courts to look "'only to the statutory definition[ ] of the prior offense[ ]' and [courts] may not 'consider other evidence' . . . including, 'the particular facts underlying [a] conviction[.]'" *Singh v. Ashcroft*, 383 F.3d 144, 147-48 (3d Cir. 2004) (quoting *Taylor*, 495 U.S. at 600).

Here, the District Court found that false imprisonment is a crime of violence under the Guidelines and it stated that it "must apply the formal categorical approach and look only to the statutory definition of [McMiller's] crime." App. at 38b. It then analyzed the Georgia statute, stating that "false imprisonment . . . involves conduct that presents a serious potential risk of physical injury to another." App. at 38b (citing U.S.S.G. § 4B1.2(a)). It cited opinions from other circuits in which offenses similar to Georgia's false imprisonment were held to be crimes of violence.

8

The District Court then stated that its "legal conclusion" – that false imprisonment under Georgia law is a crime of violence – "is bolstered by the particular facts of this case which establish that in the course of committing the offense of false imprisonment, the defendant battered his wife causing substantial and visible physical injury." App. at 39b. Even assuming that such language regarding the underlying facts is inappropriate in a categorical analysis, the Government is correct that it "must be read in context with the district court's earlier statements which . . . demonstrated its understanding of the categorical approach." Appellee's Br. at 25.

McMiller points out that he was arrested and charged but not convicted of false imprisonment in Georgia, and argues that to find that an offense is a crime of violence under the categorical approach, there must be an actual conviction of the offense. This argument is unavailing.

District courts may revoke supervised release based on no more than a preponderance of the evidence that an offense was committed. *See* 18 U.S.C. § 3583(e)(3).[2] In the context of revocation of supervised release, a finding by a

_____

[2] Although we have said that "the categorical approach requires that we first establish for which specific crimes [a defendant] was *convicted*." *United States v. Remoi*, 404 F.3d 789, 792 (3d Cir. 2005) (per curiam) (emphasis added), the Supreme Court decision which established that approach, *Taylor*, mentions no such requirement. Also, *Remoi* is distinguishable as that case arose in a context in which a conviction was required before the underlying offense could be analyzed under the categorical approach. 404 F.3d at 792.

preponderance of the evidence that the defendant violated a state law that proscribes a crime of violence is sufficient for purposes of the categorical approach.

We reject McMiller's argument that the District Court's finding that he committed false imprisonment under Georgia law was unsupported by the evidence adduced at the revocation hearing. We review the District Court's factual determinations in a revocation hearing for clear error. *United States v. Bladeston*, 940 F.2d 877, 892 (3d Cir. 1991). Although Marlo "testified . . . that during the argument her office door was closed [but] . . . not lock[ed] [and that McMiller] did [not] prevent her from leaving," Appellant's Br. at 11, at her interview by the Georgia police officer, she stated that "she was held against her will for over an hour." App. at 15b. At the preliminary hearing in McMiller's state court proceeding it was revealed that Marlo had reported to the officers that McMiller "locked the door to the office not allowing her to leave" and that he "drove around continually yelling and hitting her [for] . . . another 45 minutes. . . ." App. at 53b-54b. Notwithstanding Marlo's statement that she did not "want to be the reason that [McMiller] goes to jail," App. at 30b, the District Court did not abuse its discretion in finding that McMiller "confined or detained [Marlo] without legal authority and in violation of her personal liberty . . . ." App. at 37b.

### III. Conclusion

For the above-stated reasons, we will affirm the judgment and sentence of the District Court.

10