[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-12054
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 5, 2012
JOHN LEY
CLERK

D.C. Docket No. 4:10-cr-00029-RLV-WEJ-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ANDREW JACKSON CHITWOOD,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(April 5, 2012)

Before CARNES, BARKETT, and ANDERSON, Circuit Judges.

CARNES, Circuit Judge:

Andrew Chitwood appeals his 188-month sentence, which was imposed after he pleaded guilty to and was convicted of possession with intent to distribute methamphetamine and obstruction of an officer. The sentence was based in part on the district court's ruling that Chitwood's previous conviction for violating Georgia's false imprisonment statute qualified as a crime of violence for purposes of career offender treatment under United States Sentencing Guidelines § 4B1.1. He contends that was error.

I.

A police informant arranged to buy $5,200 worth of methamphetamine from Chitwood. They met at a gas station, and the informant confirmed that Chitwood had the drugs in his car. Police officers then pulled cars in front of and behind Chitwood's car, identified themselves as law enforcement, and asked Chitwood to exit his car. Instead of exiting, Chitwood put his car in reverse and hit an officer's vehicle, causing minor damage. Police then arrested him without further incident. Searches of Chitwood and his car yielded 150.68 grams of methamphetamine and a 9mm pistol.

A federal grand jury indicted Chitwood on three counts: possession with intent to distribute more than 50 grams of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B); possession of a firearm by a convicted felon, in

violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2); and obstruction of an officer, in violation of 18 U.S.C. § 111(a)(1) and (b). As part of a written plea agreement, Chitwood pleaded guilty to the first and third counts, and the second count was dismissed.

The presentence investigation report recommended a base offense level of 26 because Chitwood possessed between 50 and 200 grams of methamphetamine. See U.S.S.G. § 2D1.1(c)(7) (Nov. 2010). The report added 2 levels because Chitwood possessed a firearm, see id. § 2D1.1(b)(1), and subtracted 3 levels for acceptance of responsibility, see id. § 3E1.1(a), (b). It also recommended 24 criminal history points, placing Chitwood in criminal history category VI. With an adjusted offense level of 25 and a criminal history category of VI, Chitwood's guidelines range would have been 110 to 137 months. See id. § 5A (Sentencing Table).

The PSR recommended, however, that the court sentence Chitwood as a career offender under § 4B1.1(a) of the guidelines. That recommendation was premised on the view that he had previously been convicted of committing two predicate crimes of violence—false imprisonment and aggravated assault—which made him a career offender within the meaning of § 4B1.1(a). As a career offender, Chitwood's offense level would be bumped up to 34 because one of his

3

offenses had a statutory maximum sentence of 25 years or more.  See 21 U.S.C. §

841(b)(1)(B); U.S.S.G. § 4B1.1(b)(B).[1]  He would, however, still be eligible for

the 3-level reduction for acceptance of responsibility.  See U.S.S.G. § 4B1.1(b).

The net result of treating Chitwood as a career offender would be a guidelines

range of 188–235 months instead of 110–137 months.

Chitwood objected to the PSR's recommendation that he be treated as a

career offender.  He argued that a violation of Ga. Code Ann. § 16-5-41, Georgia's

false imprisonment statute, was not a crime of violence under the categorical

approach.  He also objected to any factual description of the offense in the PSR to

the extent it was based on documents other than those approved by Shepard v.

United States, 544 U.S. 13, 125 S.Ct. 1254 (2005).

At the sentence hearing, the government conceded that this Court had never

addressed whether violation of Georgia's false imprisonment statute was a crime

of violence but argued that it was.  Chitwood took the position that  because false

imprisonment is not an enumerated offense in § 4B1.2(a)(2) of the sentencing

guidelines and there is no "physical force" element to the offense, see U.S.S.G. §

4B1.2(a)(1), as it is defined under Georgia law, see Ga. Code Ann. § 16-5-41, the

---

[1]As a career offender, Chitwood's criminal history category would automatically be VI, see § 4B1.1(b), but that made no difference because it already was VI even without consideration of his career offender status.

crime can only be a crime of violence if it falls within the scope of the residual clause of § 4B1.2(a)(2). He argued that, applying our test from United States v. Harrison, 558 F.3d 1280, 1287 (11th Cir. 2009) abrogated by Sykes v. United States, __ U.S. __, 131 S.Ct. 2267 (2011), the underlying offense of false imprisonment is not a crime of violence.[2]

The district court adopted the PSR, including the finding that false imprisonment was a crime of violence. Although the record is somewhat unclear on this point, the court appears to have applied the modified categorical approach, see United States v. Pantle, 637 F.3d 1172, 1176 (11th Cir. 2011), in determining that the crime of false imprisonment for which Chitwood had been convicted was a crime of violence under § 4B1.2. As a result, it set Chitwood's total offense level at 31, and with a criminal history category of VI, his guidelines range was 188–235 months. The court imposed a sentence of 188 months imprisonment.

## II.

"We review de novo whether a prior conviction qualifies as a 'crime of violence' under the Sentencing Guidelines." United States v. Lockley, 632 F.3d

---

[2] In determining whether a conviction is a crime of violence under U.S.S.G. § 4B1.2, we also rely on cases interpreting the residual clause of the Armed Career Criminal Act, 18 U.S.C. § 924(e), because the § 4B1.2 definition of "crime of violence" and ACCA's definition of "violent felony" are substantially the same. See United States v. Archer, 531 F.3d 1347, 1350 n.1 (11th Cir. 2008).

1238, 1240 (11th Cir. 2011).  And "we may affirm 'for any reason supported by the record, even if not relied upon by the district court.'"  United States v. Al-Arian, 514 F.3d 1184, 1189 (11th Cir. 2008) (quoting Williams v. Bd. of Regents of Univ. Sys. of Ga., 477 F.3d 1282, 1284 (11th Cir. 2007)).

Under § 4B1.2 of the guidelines, any state or federal offense that is punishable by more than one year of imprisonment can be a crime of violence if it fits within one of three categories.  The first category includes crimes that have "as an element the use, attempted use, or threatened use of physical force against the person of another . . . ."  U.S.S.G. § 4B1.2(a)(1).  The second category includes the enumerated crimes of "burglary of a dwelling, arson, or extortion" and those involving the "use of explosives."  § 4B1.2(a)(2).  The third category, sometimes referred to as residual clause crimes, includes those that "otherwise involve[] conduct that presents a serious potential risk of physical injury to another."  Id.

The use, attempted use, or threatened use of physical force is not an element of false imprisonment under Ga. Code Ann. § 16-5-41, so the first category of violent crimes is out.  Nor is false imprisonment one of the enumerated offenses in § 4B1.2(a)(2), so the second category is out too.  That leaves the third category, residual clause crimes.

There are two ways in which a crime can fall within the residual clause of §

6

4B1.2(a)(2). The first way is the categorical approach, under which "'we consider whether the <u>elements of the offense</u> are of the type that would justify its inclusion within the residual provision, without inquiring into the specific conduct of this particular offender.'" <u>Sykes v. United States</u>, __ U.S. __, __,131 S.Ct. 2267, 2272 (2011) (quoting <u>James v. United States</u>, 550 U.S. 192, 202, 127 S.Ct. 1586, 1594 (2007)). If the elements of an offense are such that any conviction for violating that statute will fall within the scope of the residual clause, then we can say categorically that the offense is a crime of violence under the residual clause.

The second way that a crime can come within the residual clause is the modified categorical approach, which can be applied where some, but not all, of the violations of a particular statute will involve the requisite violence. <u>See</u> <u>Pantle</u>, 637 F.3d at 1175. Said another way, courts apply the modified categorical approach "when the law under which a defendant has been convicted contains different statutory phrases—some of which qualify as 'crimes of violence' and some of which do not . . . ." <u>Id.</u> In that statement, "different statutory phrases" means different statutory elements or ways of violating the statute.

### III.

At sentencing in this case, the district court cited <u>Pantle</u> and stated that it was applying the modified categorical approach to conclude that Chitwood's

Georgia false imprisonment conviction was for a crime of violence. Using that approach to "determine which statutory phrase was the basis for the conviction" involves consulting "a narrow universe of 'Shepard documents' that includes any charging documents, the written plea agreement, the transcript of the plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." Id.; see Shepard, 544 U.S. at 26, 125 S.Ct. at 1263 ("We hold that enquiry under the ACCA to determine whether a plea of guilty to burglary defined by a nongeneric statute necessarily admitted elements of the generic offense is limited to the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information."). The problem is, as Chiwood argues, the government concedes, and we agree, that the district court did not consult any Shepard documents at all when deciding that Chitwood's Georgia conviction for false imprisonment was for a crime of violence.

IV.

The government argues, however, that the error in the district court's application of the modified categorical approach to Chitwood's Georgia false imprisonment conviction does not require setting aside his career-offender-

8

enhanced sentence because that conviction is a crime of violence under the categorical approach, which the district court did not apply. The government had argued at the sentence hearing that false imprisonment was categorically a crime of violence. Because we can affirm for any reason supported by the record, "[e]ven though the district court did not reach the residual clause issue, we can still decide it." United States v. Harris, 608 F.3d 1222, 1227 (11th Cir. 2010). That is true where, as here, the alternative route for affirming does not require fact findings that have not yet been made by the district court.

In James v. United States, 550 U.S. 192, 201–02, 127 S.Ct. 1586, 1593–94 (2007), the Supreme Court instructed federal courts to use a "categorical approach" to analyze whether a crime created sufficient risk of physical injury to another to fit within the residual clause. We were told that under that approach we should "look only to the fact of conviction and the statutory definition of the prior offense," and not to the "particular facts disclosed by the record of conviction." Id. at 202, 127 S.Ct. at 1594 (quotation marks omitted). It is "the elements of the offense" and not "the specific conduct of this particular offender" we examine. Id.; see also Chambers v. United States, 555 U.S. 122, 125, 129 S.Ct. 687, 690 (2009). And it is the "ordinary" or "generic" case that counts. Harrison, 558 F.3d at 1285; see also Begay v. United States, 553 U.S. 137, 141, 128 S.Ct. 1581, 1584

9

(2008) ("In determining whether [a] crime is a violent felony, we consider the offense generically, that is to say, we examine it in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion."); James, 550 U.S. at 208, 127 S.Ct. at 1597 ("[T]he proper inquiry is whether the conduct encompassed by the elements of the offense, in the ordinary case, presents a serious potential risk of injury to another."). Applying this categorical approach, the Supreme Court in James looked at whether attempted burglary "posed the same 'serious potential risk of physical injury' that a completed burglary did."  Harrison, 558 F.3d at 1285 (quoting James, 550 U.S. at 203, 127 S.Ct. at 1594).  The Court concluded that it did.  See James, 550 U.S. at 203–09, 127 S.Ct. at 1594–98

In Begay, the Supreme Court added to the residual clause analysis when it examined whether driving under the influence was "'roughly similar, in kind as well as in degree of risk posed,'" to any of the enumerated offenses.  Harrison, 558 F.3d at 1285 (quoting Begay, 553 U.S. at 143, 128 S.Ct. at 1585).  The Begay Court reasoned that the presence of the enumerated offenses as examples implied that ACCA covered "only similar crimes, rather than every crime that 'presents a serious potential risk of physical injury to another.'"  Begay, 553 U.S. at 142, 128 S.Ct. at 1585 (quoting 18 U.S.C. § 924(e)(2)(B)(ii)).  It noted that "[t]he listed

10

crimes all typically involve purposeful, violent, and aggressive conduct." Begay, 553 U.S. at 144–45, 128 S.Ct. at 1586 (quotation marks omitted). It followed that to be similar in kind to those listed crimes—burglary, arson, extortion, and the use of explosives— offenses that were violent crimes under the residual provision must also involve "purposeful, violent, and aggressive conduct." See Chambers, 555 U.S. at 128, 129 S.Ct. at 692; Begay, 553 U.S. at 144–45, 128 S.Ct. at 1586; Harrison, 558 F.3d at 1295 ("Begay requires courts to further address whether the crime is similar 'in kind' to burglary, arson, extortion, and the use of explosives. For [an offense] to be 'similar in kind' to those enumerated offenses, the conduct underlying the crime must be 'purposeful, violent, and aggressive.'" (internal citations omitted)). Because it concluded that DUI was not "purposeful, violent, and aggressive" in that sense, the Court held that it was not a violent felony. Begay, 553 U.S. at 144–45, 148, 128 S.Ct. at 1586–88.

In our Harrison decision we synthesized James and Begay into a three-part test for determining whether a state offense is a crime of violence under the categorical approach:

> First, what is the relevant category of crime, determined by looking to how the crime is ordinarily committed? Second, does that crime pose a "serious potential risk of physical injury" that is similar in degree to the risks posed by the enumerated crimes? Third, is that crime similar in kind to the enumerated crimes?

11

Harrison, 558 F.3d at 1287. To determine whether a crime is "similar in kind" to an enumerated offense, "we ask whether the conduct at issue in the statute is 'purposeful, violent and aggressive,' or, whether it is a more passive crime of inaction." United States v. Harris, 608 F.3d 1222, 1227 (11th Cir. 2010).

Last year, however, the Supreme Court revisited the residual clause in Sykes v. United States, __ U.S. __, 131 S.Ct. 2267 (2011), and the ever-shifting sands of the residual clause shifted again.[3] The previous conviction at issue in Sykes was knowingly or intentionally fleeing in a vehicle from a law enforcement officer in violation of Indiana Code § 35-44-3-3. The Court noted that, "[i]n general, levels of risk divide crimes that qualify [under the residual clause] from those that do not," and that the only decision "in which risk was not the dispositive factor is Begay." Sykes, 131 S.Ct. at 2275. The Court reasoned that Begay's "purposeful,

---

[3] Justice Scalia's dissent in Sykes asserts that the residual clause of the ACCA is unconstitutional because it is so vague that it "does not 'give a person of ordinary intelligence fair notice' of its reach." Sykes, 131 S.Ct. at 2287 (Scalia, J., dissenting) (quoting United States v. Batchelder, 442 U.S. 114, 123, 99 S.Ct. 2198, 2203–04 (1979)). See generally Sykes, 131 S.Ct. at 2284–88 (Scalia, J., dissenting). His dissent notes that Sykes is the Court's fourth attempt in four years to clarify which crimes qualify as violent felonies under the ACCA residual clause. Id. at 2284. However logical Justice Scalia's reasoning, and however appealing the result of that logic might be to courts like our own with caseloads enhanced by residual clause enhancement issues, the majority opinion in Sykes took the position that the ACCA residual clause "states an intelligible principle and provides guidance that allows a person to 'conform his or her conduct to the law.'" Id. at 2277 (majority opinion) (quoting Chicago v. Morales, 527 U.S. 41, 58, 119 S.Ct. 1849, 1860 (1999) (plurality opinion)). That position appears to foreclose a conclusion, at least by a lower federal court such as our own, that the residual clause is unconstitutionally vague. In any event, the parties in this case have not raised that issue.

12

violent, and aggressive" language had "no precise textual link to the residual clause" and was "an addition to the statutory text." Id. Further, it stated that crimes that are "purposeful, violent, and aggressive" and crimes that "present serious potential risks of physical injury to others tend to be one and the same." Id. Therefore, "[i]n many cases the purposeful, violent and aggressive inquiry will be redundant with the inquiry into risk . . . ." Id. The Court concluded in Sykes that risk level provided a better categorical standard than the purposeful, violent, and aggressive standard it had articulated in Begay just two years earlier. Id. at 2275–76.

Another explanation the Sykes court gave for retreating from the Begay standard, or at least curtailing its reach, is that the focus on "purposeful, violent, and aggressive" was useful primarily to explain the result in Begay, which had involved DUI, "a crime akin to strict liability, negligence, and recklessness crimes." Id. at 2276. The vehicle flight to avoid law enforcement statute at issue in Sykes, by contrast, required knowing or intentional flight, and therefore was "not a strict liability, negligence, or recklessness crime." Id. Because of that distinction and because the statute involved in Sykes was categorically similar in risk to the offenses named in the residual clause, the Sykes Court concluded that a conviction for knowingly or intentionally fleeing in a vehicle from a law

13

enforcement officer is a violent crime under the residual clause.  Id. at 2275–76.

Of our sister circuits that have spoken to the issue, a majority have concluded that Sykes means that Begay's "purposeful, violent, and aggressive" analysis is useful only when dealing with strict liability, negligence, or recklessness crimes.  See, e.g., United States v. Meeks, __ F.3d __, __, No. 10-5336, 2012 WL 15169, at *2 (6th Cir. Jan. 5, 2012) ("The Supreme Court has recently suggested that Begay's purposeful, violent, and aggressive conduct inquiry should be limited to crimes based on strict liability, negligence, and recklessness because it is not based on statutory language and is often redundant with the inquiry into risk.  In other cases, levels of risk will generally divide crimes that qualify as crimes of violence from those that do not." (citations and quotation marks omitted)); United States v. Rodriguez, 659 F.3d 117, 119 (1st Cir. 2011) ("According to Sykes, Begay's purposeful, violent, and aggressive formulation will be redundant with the inquiry into risk when the felony at issue is not a strict liability, negligence, or recklessness crime.  Where the prior felony has a stringent mens rea requirement—as is the case here—Begay provides no shelter." (internal citations and quotation marks omitted)); United States v. Watson, 650 F.3d 1084, 1093 (8th Cir. 2011) ("Thus, provided the felony at issue is not 'akin to strict liability, negligence, or recklessness crimes,' it qualifies as a

14

crime of violence under the residual clause if it is 'as a categorical matter, similar in risk to the listed crimes.'" (quoting Sykes, 131 S.Ct. at 2275–76)); United States v. McMurray, 653 F.3d 367, 376 n.9 (6th Cir. 2011) ("[T]he Supreme Court retreated to some degree from Begay's 'purposeful violent, and aggressive' standard. Nevertheless, the Court indicated that the Begay standard remains applicable when the felony is a strict liability, negligence, or recklessness crime."); United States v. Armijo, 651 F.3d 1226, 1237 n.14 (10th Cir. 2011) (noting similarity of risk as dispositive and applying Sykes to U.S.S.G. § 4B1.2); United States v. Hill, 645 F.3d 900, 910 (7th Cir. 2011). But see United States v. Koufos, __ F.3d __, __, Nos. 10-2195, 10-2199, 10-2200, 2011 WL 6778133, at *5–8 (10th Cir. Dec. 27, 2011) (not addressing the Sykes/Begay question explicitly, but analyzing for "purposeful, violent, and aggressive conduct" post-Sykes); United States v. Park, 649 F.3d 1175, 1177–78, 1180 (9th Cir. 2011) (not addressing the Sykes/Begay question explicitly, but finding post-Sykes that California first-degree burglary was "roughly similar" to the enumerated generic burglary in part because it typically involved "purposeful, violent, and aggressive conduct.").

Because Sykes makes clear that Begay's "purposeful, violent, and aggressive" analysis does not apply to offenses that are not strict liability, negligence, or recklessness crimes, we join the general consensus of the circuits

15

recognizing as much. Offenses that are not strict liability, negligence, or recklessness crimes qualify as crimes of violence under U.S.S.G. § 4B1.2(a)(2)'s residual clause if they categorically pose a serious potential risk of physical injury that is similar to the risks posed by one of the enumerated crimes. See Sykes, 131 S.Ct. at 2275–76. At least where the previous conviction required knowing or intentional conduct, it is enough if that conviction was for a crime that generally risks as much physical injury as one of the enumerated crimes.

V.

Therefore, we compare the risk of serious physical injury that violations of Georgia's false imprisonment statute pose to that posed by the closest analog among the enumerated offenses—burglary of a dwelling. See id. at 2273. The risk need not be present in every conceivable violation of the false imprisonment statute, just as it is not present in every burglary of a dwelling, but it must be present "in the ordinary case." Harris, 608 F.3d at 1228 (quoting James, 550 U.S. at 208, 127 S.Ct. at 1597).

"Burglary is dangerous because it can end in confrontation leading to violence." Sykes, 131 S.Ct. at 2273; see also James, 550 U.S. at 199–200, 127 S.Ct. at 1592 (noting that all of the enumerated offenses "create significant risks of bodily injury or confrontation that might result in bodily injury"). Or, as the

16

Supreme Court has explained: "The fact that an offender enters a building to commit a crime often creates the possibility of a violent confrontation between the offender and an occupant, caretaker, or some other person who comes to investigate. And the offender's own awareness of this possibility may mean that he is prepared to use violence if necessary to carry out his plans or to escape." Taylor v. United States, 495 U.S. 575, 588, 110 S.Ct. 2143, 2153 (1990).[4]

Under Georgia law, "[a] person commits the offense of false imprisonment when, in violation of the personal liberty of another, he arrests, confines, or detains such person without legal authority." Ga. Code Ann. § 16-5-41(a). As Georgia cases make clear, false imprisonment ordinarily creates risks of physical injury to another similar to the risks of burglary discussed in Taylor. See, e.g., Parson v. State, 711 S.E.2d 398, 400 (Ga. Ct. App. 2011) (finding false imprisonment where defendant pulled victim back into her car, pushed her into the driver's seat, held her by her throat, and hit her in the chest); Bearfield v. State, 699 S.E.2d 363, 365 (Ga. Ct. App. 2010) (explaining that to avoid discovery of his false imprisonment and attempted rape of a 9-year-old girl, the defendant "ran to

---

[4] The quotation from the Taylor opinion speaks of a burglar entering a building instead of entering a dwelling because the ACCA definition of "violent felony," which was involved in that case, lists "burglary" as one of the violent crimes, not "burglary of a dwelling," as § 4B1.2(a)(2) of the guidelines does in defining "crime of violence." Of course, burglary of a dwelling poses a risk of serious physical injury at least as great, and probably greater, than the burglary of a building that is not a dwelling.

17

[the victim], picked her up, and threw her off his second story rear balcony" resulting in "injuries to her lip, legs, and stomach"); Pierce v. State, 687 S.E.2d 185, 190 (Ga. Ct. App. 2009) (involving a defendant who, while holding the victim in her apartment against her will, "grabbed the victim by the hair and dragged her from room to room in the apartment while beating her. . . . took her clothes off and 'threw' her in the shower"); Williams v. State, 670 S.E.2d 828, 832–33 (Ga. Ct. App. 2008) ("[T]he false imprisonment occurred when Williams forced the victim into the prayer room closet after he raped her, bound the closet doors closed with a cord, and ordered the victim under threat of death to remain there until he left."). Arresting, confining, or detaining someone against his or her will presents a risk of serious physical injury to another similar to the risk that burglary of a dwelling presents: the risk of a violent confrontation between the offender and the person being falsely imprisoned, including the risk that the offender will have to inflict serious physical injury to detain the victim. And, just as with for burglary, the offender's awareness that such a confrontation is possible and could be necessary indicates that he may well be prepared to use violence if necessary to complete the crime or to escape.

The decisions of other circuits addressing similar statutes support our conclusion that Georgia false imprisonment creates risks similar to those created

18

by burglary of a dwelling and is, therefore, a crime of violence.  See, e.g., United States v. Capler, 636 F.3d 321, 322, 324, 329 (7th Cir. 2011) (concluding that Illinois crime of unlawful restraint is a crime of violence within the meaning of § 4B1.2(a)(2)); United States v. Billups, 536 F.3d 574, 576, 578–82 (7th Cir. 2008) (concluding the same about Wisconsin's crime of false imprisonment); United States v. Riva, 440 F.3d 722, 723, 725 (5th Cir. 2006) (concluding the same about Texas' crime of unlawful restraint of a child younger than 17 years); United States v. Stapleton, 440 F.3d 700, 703–04 (5th Cir. 2006) (concluding that Louisiana crime of false imprisonment with a dangerous weapon is a violent felony within the meaning of the ACCA); United States v. Zamora, 222 F.3d 756, 763–65 (10th Cir. 2000) (concluding that New Mexico's crime of false imprisonment is a crime of violence within the meaning of  § 4B1.2(a)(2)).

And we have held that "kidnapping is a crime of violence."  United States v. Salemi, 26 F.3d 1084, 1087 (11th Cir. 1994); see also U.S.S.G. § 4B1.2 cmt. n.1. That holding is particularly relevant because under Georgia law the crime of false imprisonment is identical to the crime of kidnapping, except false imprisonment does not require movement of the victim.  See, e.g., Hall v. State, 709 S.E.2d 348, 352 (Ga. Ct. App. 2011) ("And significantly, the only difference between the crime of kidnapping and the crime of false imprisonment is the element of

asportation."). Although the additional element of movement might increase the risk of physical injury a little, the similarity of the two offenses lends support to our conclusion that false imprisonment is also a crime of violence.

Chitwood correctly points out that both the Supreme Court and this Court have relied on statistics when determining whether offenses are crimes of violence. But we have never held that statistical evidence is required. Instead when, as here, "we are without the benefit of empirical evidence . . . we are left to rely on our own common-sense analysis of whether [the] conduct poses a serious potential risk of physical injury." United States v. Alexander, 609 F.3d 1250, 1257 (11th Cir. 2010). Here, being without the benefit of empirical evidence, we rely on our common sense, which leads us to conclude that the conduct involved in violating Georgia's false imprisonment statute generally poses a risk of serious physical injury comparable to burglary of a dwelling. Violations of Georgia's false imprisonment statute are crimes of violence, as defined in § 4B1.2(a), and for the purpose of sentencing under the career offender provision of U.S.S.G. § 4B1.1. The district court did not err in sentencing Chitwood as a career offender.

**AFFIRMED**.