[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-15206
Non-Argument Calendar
_____

D.C. Docket No. 1:09-cr-20468-PCH-2


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DARRELL BROWN,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(April 24, 2013)

Before CARNES, BARKETT and FAY, Circuit Judges.

PER CURIAM:

Darrel Brown, proceeding *pro se*, appeals the district court's denial of his

motion for a new trial under Fed.R.Crim.P. 33 based on newly discovered evidence

that the government used or failed to correct false testimony at his trial.  On appeal, Brown argues that the district court applied the wrong standard of review in denying his motion and that the presentation of materially false testimony at his trial violated his constitutional rights.  For the reasons set forth below, we affirm the denial of Brown's motion for a new trial.

I.

A federal grand jury charged Brown, Cory Cortes, and Oscar Gonzalez with (1) conspiracy to possess with intent to distribute five kilograms or more of cocaine in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A)(ii) (Count One); and (2) attempted possession with intent to distribute five kilograms or more of cocaine in violation of §§ 846, 841(a)(1) and (b)(1)(A)(ii) (Count Two).  After a jury trial, Brown was convicted of Count One, the conspiracy charge, but acquitted with respect to Count Two, the attempt charge.  On October 9, 2009, the district court imposed the judgment and sentenced Brown to 240 months' imprisonment.

On direct appeal, we explained the underlying facts for Brown's convictions.  *See United States v. Gonzalez*, 414 F.App'x 189, 192-93 (11th Cir.), *cert. denied*, 132 S.Ct. 184 (2011).  Specifically, Brown's charges arose out of an undercover "reverse sting" operation conducted by the Bureau of Alcohol, Tobacco, and Firearms and the Miami–Dade Police Department.  *Id.* at 192.  The government's case was based on the testimony of an undercover detective, Juan Sanchez, and

video and audio recordings of meetings between Sanchez, the defendants, and a confidential informant ("CI"). In 2009, the CI introduced Gonzalez to Sanchez, who was playing the role of a drug courier for a Colombian cocaine-trafficking organization. *Id.* During a meeting in April 2009, the CI, Cortes, Sanchez, and Brown, planned a robbery of a shipment of cocaine. *Id.* at 193. On May 14, 2009, the day of the robbery, the CI met with the defendants to drive to Detective Sanchez's office and, after their arrival, federal agents arrested Cortez, Brown, and Gonzalez. *Id.* at 193-94. In affirming Brown's conviction, we held that the government presented sufficient evidence to show that the defendants entered into an agreement to commit the cocaine robbery. *Id.* at 199-200. Further, we noted that Brown and Cortes mentioned that they already had found buyers for their portions of the cocaine, which further demonstrated that they intended to proceed with the robbery. *Id.* at 199.

On July 23, 2012, Brown filed a *pro se* motion for a new trial under Rule 33 based on "newly[] discovered evidence" that the government knowingly used perjured testimony to obtain a conviction. Further, he alleged that the government's actions violated his due process rights and rendered the trial fundamentally unfair. Specifically, Agent Jason Stankiewicz, who was the "CI handler" in the case, testified that he thought that the CI had been arrested twice for battery and once for firearms possession. Contrary to this testimony, Brown

3

later discovered that the CI, known as "CI Mike," was a "versatile criminal with an extensive record that spanned []30 years." As to the new evidence, the CI, whose name was Miguel Gonzalez, had testified as a government witness in another case. During his testimony, Gonzalez confirmed that he had at least ten criminal convictions between 1973 and 1998.

Further, Brown alleged that, at his trial, Agent Stankiewicz testified that he had known the CI for two or three years and had worked with him on about five or six cases. Thus, there was no doubt that Agent Stankiewicz knew the extent of the CI's criminal history and intentionally testified falsely regarding this issue. Further, the falsehood was material to Agent Stankiewicz's credibility and to the CI's credibility, which was a substantial issue in the case. Although the CI did not testify at trial, he was "in every sense [Brown's] accuser and a witness in th[e] case." Thus, Brown should have been given a fair opportunity to discredit the CI. Additionally, because Agent Stankiewicz's testimony was "vital" to the CI's credibility and the government's case, Brown should also have been able to impeach Agent Stankiewicz with evidence of his false testimony. In sum, Brown argued that the government knowingly used perjured testimony to obtain a conviction in violation of *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).

4

After the government's response, the district court denied Brown's motion for a new trial. Subsequently, Brown filed a reply to the government's response, arguing that the government failed to address the issue that was raised in his motion for a new trial. He argued that the government mistakenly relied on the standard of review applicable to Rule 33 motions based on newly discovered evidence, instead of the standard that is applicable to *Giglio* violations.

The district court construed Brown's reply as a motion to vacate its prior order denying his motion for a new trial. The district court granted the motion so that it could consider Brown's reply. After considering Brown's reply, the district court issued another order denying his motion for a new trial. Specifically, the court found that, essentially, Brown argued that he was entitled to a new trial based on newly discovered evidence. However, because the CI was not called as a witness at Brown's trial, the CI's criminal history was not a proper subject of impeachment as to Agent Stankiewicz. Moreover, Brown had made no showing that impeachment of a non-testifying CI was appropriate or relevant. Brown also made no showing that the CI did anything improper during the reverse sting operation that would have made his criminal history relevant. Additionally, newly discovered evidence relating to the CI's criminal history was merely impeachment evidence that was cumulative and, as such, it did not justify a new trial. Finally, "and most importantly," there was overwhelming evidence against the defendants,

5

primarily in the form of recordings in which the defendants "repeatedly and clearly implicate[d] themselves in their conspiracy to possess cocaine." Thus, evidence of the CI's additional arrests was not likely to produce a different result at a new trial.

## II.

We ordinarily review the district court's ruling on a motion for a new trial for abuse of discretion. *United States v. Thompson*, 422 F.3d 1285, 1294-95 (11th Cir. 2005). We also review a district court's denial of a motion for a new trial based on a *Giglio* violation for abuse of discretion. *United States v. Marquez*, 594 F.3d 855, 859-60 (11th Cir. 2010). Moreover, we may affirm the district court's decision on any ground supported by the record. *United States v. Chitwood*, 676 F.3d 971, 975 (11th Cir.), *cert. denied*, 133 S.Ct. 288 (2012).

Rule 33 provides that "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed.R.Crim.P. 33(a). A motion for a new trial grounded on newly discovered evidence must be filed within three years after the verdict or finding of guilt. Fed.R.Crim.P. 33(b)(1). However, "[m]otions for a new trial based on newly discovered evidence are highly disfavored in the Eleventh Circuit and should be granted only with great caution. Indeed, the defendant bears the burden of justifying a new trial." *United States v. Campa*, 459 F.3d 1121, 1151 (11th Cir.2006) (*en banc*). The movant of a Rule 33 motion based on newly discovered evidence must establish that:

(1) the evidence was discovered after trial, (2) the failure of the defendant to discover the evidence was not due to a lack of due diligence, (3) the evidence is not merely cumulative or impeaching, (4) the evidence is material to issues before the court, and (5) the evidence is such that a new trial would probably produce a different result.

*United States v. Jernigan*, 341 F.3d 1273, 1287 (11th Cir. 2003).  "Failure to meet any one of these elements will defeat a motion for a new trial."  *United States v. Starrett*, 55 F.3d 1525, 1554 (11th Cir.1995).

The government's presentation of perjured testimony or failure to correct false evidence violates due process.  *Giglio*, 405 U.S. at 153-55, 92 S.Ct. at 766.  To prevail on a *Giglio* claim, the defendant must establish that (1) the prosecutor knowingly used perjured testimony, or failed to correct what he subsequently learned was false testimony; and (2) the falsehood was material.  *United States v. Dickerson*, 248 F.3d 1036, 1041 (11th Cir. 2001).  Perjury is defined as testimony "given with the willful intent to provide false testimony and not as a result of a mistake, confusion, or faulty memory."  *United States v. McNair*, 605 F.3d 1152, 1208 (11th Cir. 2010) (quotation omitted).  A false statement is material if there is any reasonable likelihood that it could have affected the jury's judgment.  *United States v. Alzate*, 47 F.3d 1103, 1110 (11th Cir. 1995).

As an initial matter, Brown correctly notes that the district court denied his motion for a new trial without specifically addressing whether the government had violated his due process rights only under the standard applicable to *Giglio* claims.

7

Instead, the district court reviewed Brown's Rule 33 under the requirements for a new trial based on newly discovered evidence, as enumerated in *Jernigan*. *See Jernigan*, 341 F.3d at 1287. Before the district court, Brown asserted that he was entitled to a new trial based on newly discovered evidence that the government had violated *Giglio*. Regardless of whether the district court should have separately addressed Brown's *Giglio* claim, as opposed to only applying the standard for Rule 33 motions based on newly discovered evidence, we may affirm on any basis supported by the record. *See Chitwood*, 676 F.3d at 975. Here, a review of the record shows that Brown was not entitled to a new trial under either standard of review.

First, the district court did not abuse its discretion in concluding that Brown was not entitled to a new trial under Rule 33 based on newly discovered evidence. Assuming that evidence related to the CI's criminal history would have even been admissible to impeach Agent Stankiewicz, the asserted newly discovered evidence did not warrant a new trial because: (1) it was merely impeaching and cumulative; (2) it was not material to the issues at trial; and (3) the evidence was not such that it would probably produce a different result at a new trial. *See Jernigan*, 341 F.3d at 1287. On direct appeal from Brown's conviction, we explained that the government's case was based on the testimony of Detective Sanchez, the undercover officer, and video and audio recordings of meetings between Detective

8

Sanchez, the defendants, and the CI. *See Gonzalez*, 414 F.App'x at 192. Brown's own statements showed that he participated in planning the cocaine robbery and confirmed his desire to participate. *See id.* at 192-93. Further, we determined that the evidence was sufficient to show that Brown entered into an agreement to commit a cocaine robbery, and we noted that Brown's own incriminating statements demonstrated that he intended to proceed with the robbery. *Id.* at 199-200.

In light of the evidence of Brown's involvement in the drug conspiracy, including Detective Sanchez's testimony regarding his interactions with Brown and Brown's own incriminating statements, any evidence related to the CI's criminal history would not have been likely to result in an acquittal. *See Jernigan*, 341 F.3d at 1287. Moreover, evidence that the CI had a more extensive criminal history than Agent Stankiewicz's testimony suggested was merely impeaching and cumulative, as the jury was aware that the CI had been criminally active before his involvement in the case. *See id.* Thus, in light of the "highly disfavored" nature of new-trial motions based on newly discovered evidence, *see Campa*, 459 F.3d at 1151, the district court did not abuse its discretion in denying Brown's Rule 33 motion.

Second, Brown failed to demonstrate that he was entitled to a new trial based on a *Giglio* violation. Specifically, Brown's new evidence of the CI's

criminal history did not establish that Agent Stankiewicz knowingly presented false testimony or that the government intentionally failed to correct false testimony. *See Dickerson*, 248 F.3d at 1041. At Brown's trial, Agent Stankiewicz testified that he *thought* that the CI had two prior arrests for battery and one arrest for firearms possession. Although Brown asserts that Agent Stankiewicz was familiar with the CI, Brown has not established that Agent Stankiewicz's inaccurate recollection of the CI's criminal history was not merely the result of mistake, confusion, or faulty memory. *See McNair*, 605 F.3d at 1208. Regardless, for the reasons discussed above, Agent Stankiewicz's incorrect testimony regarding the extent of the CI's criminal history was not material. *See Dickerson*, 248 F.3d at 1041. Based on the evidence of Brown's guilt that we discussed on direct appeal, there was not a reasonable likelihood that any additional evidence regarding the CI's criminal history could have affected the jury's verdict. *See Alzate*, 47 F.3d at 1110; *See Gonzalez*, 414 F.App'x at 192-93, 199-200. In sum, Brown has failed to meet his burden of establishing that the government violated his due process rights and or that newly discovered evidence warranted a new trial. *See Campa*, 459 F.3d at 1151.

For the foregoing reasons, we affirm the district court's denial of Brown's motion for a new trial.

**AFFIRMED.**

10