[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-11665
Non-Argument Calendar
_____

D.C. Docket No. 9:11-cr-80138-DTKH-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

GERSON THERAMENE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(April 23, 2013)

Before TJOFLAT, PRYOR and FAY, Circuit Judges.

PER CURIAM:

Gerson Theramene appeals his convictions and total sentence of 240 months

for being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1) (Count 1);

possession with intent to distribute cocaine, 21 U.S.C. § 841(a)(1) (Count 2); possession with intent to distribute cocaine base, commonly known as "crack cocaine," 21 U.S.C. § 841(a)(1) (Count 3); and possession of a firearm in furtherance of a drug-trafficking crime, 18 U.S.C. § 924(c)(1)(A) (Count 4). For the reasons set forth below, we affirm Theramene's convictions and sentences.

I.

Before trial, Theramene filed two motions to dismiss Count 1 of the indictment on the basis that § 922(g)(1) was unconstitutional. Theramene also filed a motion to suppress the statement he gave to law enforcement following his arrest because, before he was interrogated, agents allegedly informed Theramene that, if he did not cooperate with them, they would arrest his sister and brother. At the hearing on Theramene's motion to suppress, Adam Myers, a detective with the West Palm Beach Police Department, testified that he interviewed Theramene at the police station. The interview was recorded, with the exception of Myers reading Theramene his *Miranda*[1] rights, and Myers was unsure who had activated the recording device or why not all of the interview was recorded. Myers had not threatened Theramene with the arrest of his brother or sister during the interview.

At the hearing, Theramene testified on his own behalf that he was advised of his *Miranda* rights before he was interviewed, but he only agreed to speak because

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 444, 460-61, 86 S.Ct. 1602, 1612, 1620-21, 16 L.Ed.2d 694 (1966).

officers had threatened to arrest his sister, brother, and girlfriend if he did not. While on the front lawn of his residence, a masked officer in a S.W.A.T. team uniform threatened Theramene. Theramene did not know the speaker's race or his identity because the speaker was masked. Theramene asked Myers at the beginning of the interview at the police station whether his family was going to be arrested. Myers responded that Theramene's brother and sister would not be arrested if Theramene cooperated.

Brian Arlotta, a detective with the West Palm Beach Police Department, testified at the hearing that he was part of the S.W.A.T. entry team that was involved in the execution of a search warrant at Theramene's residence. The S.W.A.T. team had the option of wearing a black mask that had "somewhat" of a large opening around the face so that a person's nose and a lot of the face itself was visible. During the execution of the search warrant, 25 officers were present, 14 or 15 of which were on the S.W.A.T. team. Arlotta testified that he was unaware of any S.W.A.T. team member having a discussion with Theramene about his cooperation in the case. There were, however, narcotics officers also on the scene during the execution of the warrant, but Arlotta did not know if those officers had a conversation with Theramene. Those officers who were present during the execution of the search warrant wore masks just like the S.W.A.T. team members.

3

Although Arlotta had interviewed Theramene, he did not discuss charging Theramene's sister or brother with Theramene.

In a report and recommendation, a magistrate judge found that the officers executing the search warrant at Theramene's residence wore masks that covered their faces, but their skin color could still be seen. Theramene, however, had testified that he was unable to see the skin color of the officer who threatened him because the officer was wearing a mask. Further, although Theramene claimed that Myers told him that his siblings would not be arrested so long as he cooperated, no mention was made during the recording of his siblings being arrested, and Myers expressed surprise that Theramene's sister was an occupant of the residence. Theramene did not express any concern about his siblings being arrested during the recording. The magistrate credited the testimony of the officers and found Theramene's testimony that law enforcement threatened to arrest his siblings and girlfriend to not be credible or supported by the video recording. Thus, the magistrate recommended that Theramene's motion to suppress be denied. The magistrate also recommended that Theramene's motions to dismiss Count 1 of the indictment be denied because his arguments concerning the constitutionality of § 922(g)(1) were foreclosed by our precedent. The district court adopted the magistrate's recommendation over Theramene's objections.

4

The government filed a motion *in limine* that sought to admit, *inter alia*, a 2009 incident related to Theramene's possession of crack cocaine with intent to distribute, pursuant to Fed.R.Evid. 404(b) ("Rule 404(b)"). The incident had resulted in Theramene pleading guilty to possession of crack cocaine. The court withheld ruling on the issue until trial. At trial, over Theramene's objection, the court determined that the evidence was admissible under Fed.R.Evid. 403 and Rule 404(b), and the government presented evidence of the 2009 incident at trial.

After the jury had begun deliberating, the court received a note from the jury requesting the court to provide further guidance as to interpreting and understanding the criteria related to "in furtherance of a crime." Theramene objected to the court doing anything other than re-reading the initial jury instruction. The court overruled Theramene's objection, and the court instructed the jury that the government had to prove beyond a reasonable doubt that Theramene possessed the firearm in furtherance of a drug-trafficking crime, meaning that there was some connection between possessing the firearm and the drug-trafficking crime. The court gave examples of scenarios that could satisfy the "in furtherance" element and also repeatedly instructed the jury that the government had the burden to prove the element beyond a reasonable doubt. After further deliberations, the jury found that Theramene was guilty of all four counts in the indictment.

5

Before sentencing, Theramene objected to the probation officer's classification of his prior conviction for fleeing or attempting to elude a marked police vehicle as a crime of violence.   According to Theramene, the Supreme Court's decision in *United States v. Sykes*, 564 U.S. ___, 131 S.Ct. 2267, 180 L.Ed.2d 60 (2011), holding that vehicular flight under an Indiana statute was a violent felony under the Armed Career Criminal Act ("ACCA"), did not abrogate our decision in *United States v. Harrison*, 558 F.3d 1280 (11th Cir. 2009), holding that a violation of Fla.Stat. § 316.1935(2) was not a violent felony.  At sentencing, the parties agreed that Theramene's fleeing and eluding conviction was under Fla.Stat. § 316.1935(2).  The court determined that *Sykes* effectively overruled *Harrison*.  It could not distinguish Theramene's offense under Fla.Stat. § 316.1935(2) from the Indiana statute at issue in *Sykes*, and thus, it determined that his offense was for a crime of violence.  The court also determined that a majority of the Supreme Court had not yet held that the residual clause was void for vagueness, and thus, the court overruled Theramene's vagueness objection.

After considering the 18 U.S.C. § 3553(a) factors and Theramene's mitigating arguments, the court imposed a total sentence of 240 months' imprisonment.

## II.

6

On appeal, Theramene argues that the district court erred in denying his Rule 404(b) objections to the admission of evidence of his 2009 arrest for possession of crack cocaine with intent to distribute that resulted in a conviction for possession of crack cocaine, as the evidence was not similar-fact evidence, it only showed his propensity to commit the charged offense, and its prejudicial value outweighed any probative value it may have had.  Theramene asserts that the government, by introducing evidence of his arrest in 2009, went beyond the face of a judgment of conviction for simple possession, which had been the result of a plea agreement in state court, and violated his due process rights.  Theramene asserts that the government must adhere strictly to the terms of plea agreements and is bound to the charge that it agreed to at the time the plea was entered.

We review the district court's admission of prior crimes or bad acts under Rule 404(b) for abuse of discretion.  *United States v. Ramirez*, 426 F.3d 1344, 1354 (11th Cir. 2005). Evidence of a person's character is not admissible for the purpose of proving action in conformity therewith on a particular occasion.  Fed.R.Evid. 404(a).  Rule 404(b), however, allows evidence of other crimes or acts to be admitted for the purpose of showing a defendant's intent.  Fed.R.Evid. 404(b)(2).  An extrinsic act does not need to result in criminal liability to be admissible under Rule 404(b), nor does the government have to prove the extrinsic offense beyond a reasonable doubt.  *United States v. Wyatt*, 762 F.2d 908, 911

7

(11th Cir. 1985) (providing that evidence of a defendant's prior bad act would be admissible under Rule 404(b) even if he had been tried and acquitted of the act). Further, we have previously held that a *nolo contendere* plea to an offense does not insulate the underlying facts from admissibility under Rule 404(b).  *Id.* at 909, 911-12 (providing that the government's introduction of extensive evidence concerning the facts that underlay a defendant's plea of *nolo contendere* to charges of conspiracy to traffic in cocaine in Florida was not reversible error).

To be admissible, the Rule 404(b) evidence must: (1) be relevant to an issue other than the defendant's character; (2) be proved sufficiently to permit a jury determination that the defendant committed the act; and (3) be of such a character that its probative value is not substantially outweighed by undue prejudice.  *United States v. Jernigan*, 341 F.3d 1273, 1280 (11th Cir. 2003).  Under the first prong of the Rule 404(b) test, a defendant who pleads not guilty to a drug-trafficking offense makes intent a material issue, absent the defendant taking affirmative steps to remove intent as an issue.  *United States v. Zapata*, 139 F.3d 1355, 1357-58 (11th Cir. 1998).  Where an extrinsic offense is offered to prove intent, its relevance is determined by comparing the defendant's state of mind in perpetrating the extrinsic and charged offenses.  *United States v. Edouard*, 485 F.3d 1324, 1345 (11th Cir. 2007).  Thus, the first prong of the Rule 404(b) test is satisfied

8

where the state of mind required for the charged and extrinsic offenses is the same. *Id.*

In applying the third prong of the Rule 404(b) test, the probative value of the Rule 404(b) evidence must not be substantially outweighed by its prejudicial effect. *Jernigan*, 341 F.3d at 1282. To make this determination, a district court must assess all the circumstances surrounding the extrinsic offense, including prosecutorial need, overall similarity between the extrinsic act and the charged offense, and temporal remoteness. *Id.* A district court's limiting instruction can reduce the risk of undue prejudice. *Edouard*, 485 F.3d at 1346. A similarity between the other act and a charged offense will make the other act highly probative as to a defendant's intent in the charged offense. *Ramirez*, 426 F.3d at 1354.

The district court did not abuse its discretion in admitting evidence of Theramene's 2009 arrest and conviction for possession of cocaine at trial. First, the facts surrounding Theramene's arrest for possession of crack cocaine with intent to distribute were admissible, despite the fact that Theramene was only convicted of possessing the drugs, as an extrinsic act does not have to result in a conviction to be admissible under Rule 404(b). *See Wyatt*, 762 F.2d at 911. Theramene's 2009 plea of guilty to possession of crack cocaine did not insulate the facts underlying his plea from admissibility under Rule 404(b). *Id.* at 911-12. To

the extent Theramene argues that the federal government breached his state plea agreement, his argument is without merit, as he never even specified what terms the federal government breached or how it could breach an agreement to which it was not a party.

By pleading not guilty to the possession with intent to distribute charges in the instant case, Theramene rendered his intent a material issue. *Zapata*, 139 F.3d at 1357-58.  Although his 2009 conviction for possession of crack cocaine, standing alone, may not have been relevant to show Theramene's intent in the instant case, the facts underlying his conviction coupled with the expert testimony presented at trial showed that Theramene had possessed crack cocaine with the intent to distribute, which was the same state of mind required for the instant charged offenses; thus, the first prong of the Rule 404(b) test was satisfied. *Edouard*, 485 F.3d at 1345.  Further, the probative value of the 2009 extrinsic act was not substantially outweighed by unfair prejudice.  *Jernigan*, 341 F.3d at 1282. Intent was one of the more difficult issues the government had to prove at trial, as demonstrated by Theramene's challenge on appeal to the sufficiency of the evidence as to this element.  Further, the court's limiting instruction given at trial reduced the risk of unfair prejudice that may have resulted from the evidence's admission.  *Edouard*, 485 F.3d at 1346.  Accordingly, the district court did not

abuse its discretion in admitting evidence of Theramene's 2009 conduct involving possession of crack cocaine.

## III.

Theramene argues that the evidence presented at trial was insufficient to support the "with the intent to distribute" element of his drug-trafficking offenses in light of the minuscule amount of cocaine base discovered and the lack of paraphernalia normally possessed by one distributing drugs, such as packing, cutting, or preparation material.  Theramene had also informed officers that the cocaine was for personal use.

We review both a challenge to the sufficiency of the evidence and the denial of a Fed.R.Crim.P. 29 motion for judgment of acquittal *de novo*.  *United States v. Gamory*, 635 F.3d 480, 497 (11th Cir.), *cert. denied*, 132 S.Ct. 826 (2011).  In considering the sufficiency of the evidence, we view the evidence in the light most favorable to the government, with all inferences and credibility choices made in the government's favor, and affirm the conviction if, based on this evidence, a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Id.*  It is not necessary that the evidence presented at trial excludes every reasonable hypothesis of innocence or is wholly inconsistent with every conclusion except that of a defendant's guilt.  *Id.*

11

To support a conviction under 21 U.S.C. § 841(a)(1), the government must establish that the defendant (1) knowingly (2) possessed cocaine (3) with intent to distribute it.  *United States v. Faust*, 456 F.3d 1342, 1345 (11th Cir. 2006). Knowledge, possession, and intent can be proved by direct or circumstantial evidence.  *United States v. Poole*, 878 F.2d 1389, 1391-92 (11th Cir. 1989).  Intent can be proven circumstantially from the quantity of drugs and the existence of implements, like scales, that are commonly used in connection with the distribution of cocaine.  *Id.*

The evidence presented at trial was sufficient to convict Theramene of possession of cocaine and crack cocaine with intent to distribute.  At trial, a law enforcement officer testified on behalf of the government that he observed Theramene, on at least three occasions, meet with another person, have a brief discussion, and then engage in a hand-to-hand transaction with something. Further, the government presented evidence that showed that law enforcement had discovered 8.1 grams of cocaine in a compressed form, .8 grams of crack cocaine, a loaded handgun, and a digital scale with cocaine residue on it, in Theramene's bedroom.  Law enforcement did not discover a crack pipe or other paraphernalia related to cocaine use in the home.

An expert in street-level narcotics distribution testified that compressed cocaine needed additional processing before it could be used, such as cooking it

12

into crack cocaine or breaking it down so that it could be snorted as powder. Further, that expert testified that crack cocaine was distributed in .1 or .2 of a gram increments at a time, but the evidence showed that Theramene possessed .8 grams of crack cocaine. Expert testimony further provided that drug dealers frequently used digital scales to ensure that they were selling the correct amounts and that dealers frequently carried handguns to protect themselves from being robbed. The government also introduced evidence of Theramene's 2009 arrest where he was found possessing 20 to 30 crack cocaine rocks, and expert testimony provided that most users would only purchase 1 or 2 pieces of crack cocaine at a time. Viewing this evidence in the light most favorable to the government and drawing all inferences in favor of the government, this evidence was sufficient to show that Theramene possessed cocaine and crack cocaine with the intent to distribute.

## IV.

Theramene argues that the district court erred in denying his motion to suppress his post-arrest statement to law enforcement, as his waiver of his *Miranda* rights and decision to speak with law enforcement was due to law enforcement's threat to take his family to jail. Detective Arlotta was unable to testify as to whether any other narcotics officer present during the execution of the search warrant had spoken with Theramene, and the officers failed to record the whole

conversation with Theramene, which explained why the magistrate determined that there was nothing on the recording to corroborate Theramene's testimony.

In reviewing the denial of a suppression motion, we review the district court's factual findings for clear error and its application of the law to those facts *de novo*. *United States v. Farley*, 607 F.3d 1294, 1325 (11th Cir. 2010). The voluntariness of a defendant's statement is a question of law. *Id.* We construe all facts in the light most favorable to the party who prevailed below and afford substantial deference to a factfinder's explicit and implicit credibility determinations. *United States v. Lewis*, 674 F.3d 1298, 1303 (11th Cir. 2012). We have recognized that statements are involuntary where law enforcement engages in deception that takes the form of a coercive threat. *Farley*, 607 F.3d at 1328.

We afford substantial deference to the factfinder's credibility choices, and here, the magistrate expressly found that the government's witnesses were credible, whereas Theramene was not. *Lewis*, 674 F.3d at 1303. Thus, the magistrate credited Myers's testimony that he did not threaten Theramene before interviewing him. Further, although the magistrate also credited Arlotta's testimony that he did not threaten Theramene, Arlotta also testified that he was unable to testify as to whether a narcotics officer, wearing a S.W.A.T. team mask, had spoken with Theramene. Nevertheless, the magistrate implicitly credited Arlotta's testimony that the skin color of a person wearing a S.W.A.T. mask was

14

visible, over Theramene's testimony that he could not see the officer's skin color through the mask. Thus, although Arlotta could not testify as to whether a narcotics officer, as opposed to a S.W.A.T. team member, spoke with Theramene during the execution of the search warrant, it is undisputed that Theramene expressed no concern over his siblings during his interviews and that there were inconsistencies between Theramene's testimony and the testimony of Arlotta, who the magistrate determined was credible. Accordingly, the magistrate's credibility findings concerning Theramene's testimony that he was threatened were not clearly erroneous.

V.

Theramene argues that the district court abused its discretion in responding to the jury's request for additional guidance concerning the "in furtherance of" element of one of the charged offenses. Rather than simply re-read the standard jury instruction, the court provided its own examples of what "in furtherance" could mean, including possessing a firearm to protect drugs and drug proceeds, possessing a firearm to prevent a home invasion aimed at obtaining the drugs stored at the home, and possessing a firearm so that a person could engage in drug sales more safely. According to Theramene, the court's instructions amounted to argument on behalf of the government to which Theramene could not respond, as well as placed the court in the role of advocate. Theramene asserts that the court

15

also placed facts not in evidence before the jury, but he does not further explain this assertion.

We review a district court's response to a jury question for an abuse of discretion. *United States v. Lopez*, 590 F.3d 1238, 1247 (11th Cir. 2009). Although a district court has considerable discretion regarding the extent and character of supplemental jury instructions, it does not have discretion to misstate the law or to confuse the jury. *Id.* at 1247-48. The trial court abuses its discretion only when its conduct strays from neutrality, and even then only when its remarks demonstrate pervasive bias and unfairness that actually prejudice a party. *United States v. Hill*, 643 F.3d 807, 845-46 (11th Cir. 2011), *cert. denied*, 132 S.Ct. 1988 (2012) (reviewing the defendants' argument that the district court had shown antagonism towards him at trial).

Theramene does not assert on appeal that the instructions that the court gave to the jury were legally erroneous, and thus, he has abandoned this argument. *See Jernigan*, 341 F.3d at 1283 n.8. We have, in the past, upheld the use of hypothetical examples to assist the jury in understanding a statutory element. *See United States v. Kenney*, 185 F.3d 1217, 1222-23 (11th Cir. 1999) (determining that the district court did not abuse its discretion with respect to its hypothetical examples of who could be a "public official," despite it being possible to construe the examples as overbroad). After giving the challenged examples to the jury, the

16

court stated repeatedly that the government had to prove beyond a reasonable doubt the "in furtherance of" element, and that the jurors had to make that factual determination as to whether the element was satisfied using their own judgment. Further, viewing the jury instruction as a whole, it is clear that the court was not stating that these examples were present in Theramene's case, but only explaining how a firearm could further a drug crime. The record shows that the court did not place facts before the jury not in evidence or make an argument on behalf of the government to the jury. Accordingly, the district court did not abuse its discretion with respect to its supplemental jury instructions, as nothing in the record demonstrates that the court strayed from neutrality.

## VI.

Theramene argues that the district court erred in finding that his prior conviction for simple vehicle flight under Fla.Stat. § 316.1935(2) was a crime of violence because *Sykes* did not abrogate our decision in *Harrison*, holding that such a conviction was not a violent felony under the ACCA. Theramene asserts that, although the Supreme Court's decision in *Sykes* seems to broadly rule that felony vehicle flight is a violent felony for the purposes of the ACCA, *Sykes* only addressed an Indiana statute, which differed from the Florida statute at issue in *Harrison*. Theramene notes that the Supreme Court declined to deem it irrelevant under the residual clause whether a crime is a lesser included offense in cases

17

where that offense carries a less severe penalty than the offense that includes it. Theramene argues that, unlike the Indiana statute at issue in *Sykes*, which separately punished simple and aggravated vehicle flight, Fla.Stat. § 316.1935 not only separately prohibits, but also punishes differently simple and aggravated vehicle flight, as illustrated by subsections (2) and (3) of the statute. Theramene contends that the residual clause is void for vagueness.

We review *de novo* a district court's determination that a prior conviction qualifies as a crime of violence under the Sentencing Guidelines. *United States v. Chitwood*, 676 F.3d 971, 975 (11th Cir.), *cert. denied*, 133 S.Ct. 288 (2012). Under the Sentencing Guidelines, a defendant is a career offender and subjected to an enhanced sentence if he, among other requirements, has at least two prior felony convictions of either a crime of violence or a controlled substance offense. U.S.S.G. § 4B1.1(a). A "crime of violence" is defined as any offense punishable by imprisonment for a term exceeding one year, that (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or (3) otherwise involves conduct that presents a serious potential risk of physical injury to another. U.S.S.G. § 4B1.2(a)(1)-(2).

In determining whether a conviction qualifies as a "crime of violence" under U.S.S.G. § 4B1.2, we have relied on cases interpreting the ACCA, 18 U.S.C.

18

§ 924(e), because its definition for a "violent felony" and U.S.S.G. § 4B1.2's definition for a "crime of violence" are substantially the same. *Chitwood*, 676 F.3d at 975 n.2. In determining whether an offense is a violent felony under the ACCA, courts should apply a formal categorical approach, looking only to the statutory definitions of the relevant offenses and not to the particular facts underlying those convictions. *Id.* at 976. In *United States v. Harrison*, we held that a prior state conviction for simple vehicle flight under Fla.Stat. § 316.1935(2), as opposed to aggravated vehicle flight under § 316.1935(3), was not a violent felony under the ACCA's residual clause. 558 F.3d at 1281.

In *United States v. Sykes*, the Supreme Court examined Indiana's fleeing and eluding statute, and held that felony vehicle flight was a violent felony for the purposes of the ACCA. *Sykes*, 564 U.S. at ___, 131 S.Ct. at 2271, 2277. The Court held that the Indiana crime fell within the residual clause of § 924(e)(2)(B)(ii) because, as a categorical matter, it presented a serious potential risk of physical injury to another. *Id.* at 2273. The risk posed by the crime was comparable to that posed by arson and burglary, the crime's closest analogs among the enumerated offenses. *Id.* The Court noted that, even where a criminal attempted to elude capture without going at full speed, he created the possibility that police would, in a legitimate and lawful manner, exceed or almost match his speed and use force to bring him within their custody. *Id.* The offense was

19

initiated and terminated by confrontation with law enforcement, and the intervening pursuit created a high risk of crashes. *Id.* at ___, 131 S.Ct. at 2274.

The Court also discussed the significance of the Indiana statute's differentiation between types of fleeing. *Id.* at ___, 131 S.Ct. at 2276. Sykes's offense, subsection (b)(1)(A) of Ind. Code § 35-44-3-3, criminalized flight in which the offender used a vehicle. *Id.* Subsection (b)(1)(B) of the statute criminalized flight in which the offender operated a vehicle in a manner that created a substantial risk of bodily injury to another person. *Id.* The Court rejected the argument that the statute was structured this way because the Indiana legislature did not intend subsection (b)(1)(A)'s general prohibition on vehicle flight to encompass the particular class of vehicle flights that subsection (b)(1)(B) reached. *Id.* Rather, the Court noted that the Indiana statute treated violations of subsections (b)(1)(A) and (b)(1)(B) as crimes of the same magnitude and that the similarity in punishment for these related, overlapping offenses suggested that subsection (b)(1)(A) was the rough equivalent of one type of subsection (b)(1)(B) violation. *Id.* The Court stated that the government would go further, deeming it irrelevant under the residual clause whether a crime was a lesser included offense even in cases where that offense carried a less severe penalty than the offense that included it. *Id.* at ___, 131 S.Ct. at 2277. However, the Court determined that Sykes's case did not present the occasion to decide that question. *Id.*

20

The Court concluded by stating that the residual clause of the ACCA stated an "intelligible principle" and provided guidance that allowed a person to conform his or her conduct to the law. *Id.* The Court noted that, at times, the residual clause could be difficult to implement, but it remained within congressional power to enact. *Id.* In *United States v. Gandy*, we determined that the residual clause of the ACCA was not unconstitutionally vague, in light of the Supreme Court's comments in *Sykes* concerning the residual clause. No. 11-15407, manuscript op. at 8-10 (11th Cir. Feb. 27, 2013). We noted that its conclusion that the residual clause was not unconstitutionally vague was consistent with all of the other circuits to have recently addressed the issue. *Id.* at 9.

In *United States v. Petite*, we determined that *Sykes* had undermined our holding in *Harrison*—that simple vehicle flight under Fla.Stat. § 316.1935(2) did not constitute a violent felony under the ACCA—to the point of abrogation. 703 F.3d 1290, 1297-99 (11th Cir. 2013). However, although *Harrison* was no longer binding, *Sykes* was not necessarily dispositive of Petite's appeal, as Florida's fleeing and eluding statute, § 316.1935, differed from the Indiana statute at issue in *Sykes*, as the Florida statute had a gradient of penalties for different levels of vehicle flight that the Indiana statute did not have. *Id.* at 1299. Thus, Petite's case presented the question the Supreme Court had declined to address, as, in Florida,

21

simple vehicle flight is punished differently than aggravated vehicle flight. *Id.* at 1300.

We nevertheless determined that, despite Florida's penalty framework for fleeing and eluding offenses differing from Indiana's penalty framework at issue in *Sykes*, there was little to distinguish a § 316.1935(2) offense for simple vehicle flight from the ordinary commission of the Indiana vehicle flight offense at issue in *Sykes*. *Id.* Both § 316.1935(2) and the Indiana statute criminalized the same basic conduct of intentional vehicle flight, which the Supreme Court had indicated was inherently risky. *Id.* at 1300-01. Therefore, we determined that our inquiry under the ACCA could not be dispositively altered by any difference between Florida's and Indiana's punitive determinations. In light of the Supreme Court's analysis in *Sykes* regarding the substantial risks that are inherent in the offense of intentional vehicle flight, we concluded that an offense of simple vehicle flight under Fla.Stat. § 316.1935(2) presented a serious potential risk of injury to another comparable to burglary and arson. *Id.* Thus, the Florida offense qualified as a violent felony under the ACCA. *Id.*

Here, *Petite* is dispositive of Theramene's argument that *Harrison* is still binding precedent. Specifically, in *Petite*, we determined that *Sykes* overruled *Harrison* and that, despite the difference in penalty schemes between the Indiana statute at issue in *Sykes* and Fla.Stat. § 316.1935, an offense under § 316.1935(2)

22

was a violent felony under the ACCA. *See id.* at 1297-99. Thus, the district court did not err in determining that Theramene's § 316.1935(2) conviction qualified as a crime of violence under § 4B1.1.[2] Further, *Gandy* is dispositive of Theramene's argument that the residual clause is void for vagueness, as we determined that the clause was not unconstitutionally vague, in light of the Supreme Court's statements in *Sykes*. *See Gandy*, No. 11-15407, manuscript op. at 8-10. Therefore, we reject Theramene's vagueness challenge to the residual clause. Accordingly, the district court properly sentenced Theramene under the career offender guideline.

## VII.

Theramene argues that the district court failed to give adequate weight to the offense conduct and the mitigating circumstances of his background, including the small amount of cocaine involved in his case, the impact the death of his mother had on him, his own drug use beginning at an early age, and the harshness of his sentence compared to those sentences that are suggested for those who committed significantly more serious crimes. Theramene asserts that a sentence in the range of five years' imprisonment would have been sufficient. Theramene also asserts that his sentence violated the Eighth Amendment because it was disproportionate to the offenses he committed, as well as disproportionate when compared to the sentences that could be imposed for other, more serious federal crimes.

---

[2] Fla.Stat. § 316.1935(2) was identically worded at the time of Theramene's conviction and at the time of the appellant's conviction in *Petite*. *See Petite*, 703 F.3d at 1292.

We review challenges to the constitutionality of a sentence *de novo*. *United States v. Sanchez*, 586 F.3d 918, 932 (11th Cir. 2009). We review the reasonableness of a sentence under a deferential abuse of discretion standard of review. *See Gall v. United States*, 552 U.S. 38, 51, 128 S.Ct. 586, 597, 169 L.Ed.2d 445 (2007). The party challenging the sentence has the burden of establishing that the sentence was unreasonable based on the record and the factors set forth in 18 U.S.C. § 3553(a). *United States v. Talley*, 431 F.3d 784, 788 (11th Cir. 2005).

We have previously stated that, in non-capital cases, the Eighth Amendment encompasses only a narrow proportionality principal, and that successful challenges to the proportionality of sentences are "exceedingly rare." *United States v. Raad*, 406 F.3d 1322, 1323 (11th Cir. 2005). When addressing an Eighth Amendment challenge, a reviewing court must first determine that the sentence imposed is grossly disproportionate to the offense committed and, if so, then the court must consider the sentences imposed on others convicted in the same jurisdiction and the sentences imposed for commission of the same crime in other jurisdictions. *Id.* at 1324.

In reviewing the reasonableness of a sentence, we conduct a two-step review. *Gall*, 552 U.S. at 51, 128 S.Ct. at 597. First, we must ensure that no procedural error occurred, such as improperly calculating the Guidelines range. *Id.*

24

Once we determine that a sentence is procedurally sound, we must examine whether the sentence was substantively reasonable. *Id.* In reviewing a sentence's substantive reasonableness, we examine the totality of the circumstances, which includes an inquiry into whether the § 3553(a) factors support the sentence in question. *United States v. Gonzales*, 550 F.3d 1319, 1323-24 (11th Cir. 2008). The district court must impose a sentence sufficient, but not greater than necessary, to comply with the purposes listed in § 3553(a)(2), including the need to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, deter criminal conduct, and protect the public from the defendant's future criminal conduct. *See* 18 U.S.C. § 3553(a)(2). In imposing a particular sentence, the court must also consider the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the applicable guideline range, the pertinent policy statements of the Sentencing Commission, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to victims. *Id.* § 3553(a)(1), (3)-(7).

Theramene has not shown that his sentence violated the Eighth Amendment. Because he was a career offender, was convicted under 18 U.S.C. § 924(c), and was convicted of a drug offense, his initial guideline range was 360 months' imprisonment to life. However, the court downwardly departed and varied from the guideline range and ultimately imposed a total sentence of 240 months'

25

imprisonment. His total sentence of 240 months was not grossly disproportionate to the drug-trafficking and firearm offenses he committed, as they involved cocaine, crack cocaine, and possession of a firearm by a felon. *United States v. Reynolds*, 215 F.3d 1210, 1214 (11th Cir. 2000) (providing that defendant's sentence of 180 months' imprisonment under the ACCA was not grossly disproportionate to his sole offense of possession of a firearm by a three-time felony offender). Further, we reject Theramene's assertion that his sentence was grossly disproportionate as compared to the lower sentences that other defendants receive for more serious crimes, as the first step of our Eighth Amendment analysis only examines whether a sentence is grossly disproportionate to the offense actually committed. *Raad*, 406 F.3d at 1324.

Further, Theramene has not shown that the district court imposed a substantively unreasonable sentence. Theramene's total sentence of 240 months' imprisonment was below the guideline range of 324 to 405 months' imprisonment that applied after the district court granted a downward departure from his original guideline range. The record demonstrates that the district court considered the § 3553(a) factors in imposing the sentence, and there does not appear to be anything in the record demonstrating that the sentence is substantively unreasonable based on those factors. The district court considered Theramene's extensive criminal history, which demonstrated that he was someone who acted

aggressively towards others and posed a danger to the community. The court further determined that the nature of Theramene's offenses was serious, especially in light of the fact that he had armed himself while distributing drugs. The court was unable to state that Theramene would not commit a similar offense in the future, and, in light of the violent effect the drug trade had on the community, believed it was important to deter activity like Theramene's from occurring in the future.

Under the totality of the circumstances, Theramene has not shown that the district court's decision declining to vary further from the applicable guideline range, based on his mitigating arguments, was unreasonable or resulted in a sentence greater than necessary. *Gonzales*, 550 F.3d at 1323-24. Further, although the § 3553(a) factors include the need to avoid unwarranted sentence disparities among defendants who have been found guilty of similar conduct, the factors do not include the need to avoid disparities between defendants who have committed different offenses. *See* 18 U.S.C. § 3553(a). Thus, the district court did not abuse its discretion in not varying downward further on the basis that defendants who have committed other crimes and are not sentenced as career offender have lower base offense levels than Theramene. Therefore, the court's decision declining to vary downward further from the applicable guideline range did not result in a substantively unreasonable sentence.

27

VIII.

Theramene asserts that the district court erred in failing to dismiss Count 1 of his indictment because 18 U.S.C. § 922(g)(1) violated his Second Amendment rights, as well as exceeded Congress's power under the Commerce Clause.  He concedes, however, that we have already decided these issues in favor of the government, and he states that he is only raising these issues to preserve them in the event we or the Supreme Court revisit them.

We review denials of motions to dismiss the indictment for abuse of discretion and review *de novo* any underlying legal errors.  *United States v. Broughton*, 689 F.3d 1260, 1272 (11th Cir. 2012).  Although the Supreme Court's decision in *District of Columbia v. Heller*, 554 U.S. 570, 595, 128 S.Ct. 2783, 2799, 171 L.E.2d 637 (2008), held that the Second Amendment conferred an individual right to keep and bear arms, statutory restrictions of firearm possession with respect to felons, like § 922(g)(1), do not violate the Second Amendment.  *See United State v. Rozier*, 598 F.3d 768, 770-71,  (11th Cir. 2010).  Further, § 922(g)(1) does not exceed Congress's power under the Commerce Clause because the statute has a jurisdictional element requiring the firearm at issue to have a nexus to interstate commerce.  *See United States v. Scott*, 263 F.3d 1270, 1274 (11th Cir. 2001).

As Theramene concedes, our precedent forecloses his challenges to the constitutionality of § 922(g)(1).  Accordingly, the district court did not err in denying his motions to dismiss the indictment.

For the foregoing reasons, we affirm Theramene's convictions and sentences.

**AFFIRMED.**