**FILED**

March 27 2012

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 11-0283

IN THE SUPREME COURT OF THE STATE OF MONTANA

2012 MT 69

STATE OF MONTANA,

        Plaintiff and Respondent,

   v.

DOUGLAS KIRN,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DC 10-15
Honorable Russell C. Fagg, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

        Brian Kohn, Attorney at Law, Billings, Montana

        For Appellee:

        Steve Bullock, Montana Attorney General; C. Mark Fowler, Assistant
Attorney General, Helena, Montana

        Scott Twito, Yellowstone County Attorney, Billings, Montana

Submitted on Briefs:  February 22, 2012
Decided:  March 27, 2012

Filed:

_____
Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1 Douglas Kirn (Kirn) was convicted by a jury in the Thirteenth Judicial District Court, Yellowstone County, of two counts of assault on a peace officer, both felonies. He appeals the District Court's denial of his motion to dismiss for insufficient evidence. We affirm.

## BACKGROUND

¶2 On January 5, 2010, at approximately 11:00 p.m., Billings Police Officers Tom Keightley and David Dierenfield (Officers Keightley and Dierenfield) responded to an apartment building on Monad Road in Billings, Montana, to investigate a noise complaint. Upon arrival, Officers Keightley and Dierenfield met with the complainant who told them loud television noises were coming from the apartment below hers. The apartment below the complainant's was occupied by Kirn.

¶3 Officers Keightley and Dierenfield went to Kirn's apartment to speak with him about the noise. When Kirn opened his door, he was "irritated instantly" and "very agitated, very animated, belligerent and frankly, came to the door on the fight." Kirn denied his television was too loud and "refused to turn the t.v. down."

¶4 During the officers' conversation with Kirn, they moved into and out of Kirn's apartment. At some point, inside Kirn's apartment, Kirn put his hand on Officer Keightley's shoulder. Officer Keightley testified "it wasn't like he was necessarily pushing me, he just put some light pressure against me[.]" Officer Keightley pushed Kirn's hand away and said "you don't need to touch me, don't touch me." Kirn then "reached out and this time pushed me [Officer Keightley] back." Officer Keightley "shouted at him . . . not to touch me[.]"

2

Kirn then said " 'we'll see about this' or 'we'll see about that,' one of those two things." Kirn then walked away and into a bedroom.

¶5    While Kirn was out of sight, Officer Keightley said to Officer Dierenfield "he's going to get something, I think it's a gun." Kirn then reappeared. He was standing in a "bladed stance" showing his left side while obscuring his right hand. Both officers believed Kirn walked away to get a gun, and both were scared. Neither officer could see Kirn's right hand. The officers drew their weapons and shouted at Kirn to show his hands. Kirn did not respond. Officer Keightley finally shouted at Kirn "a warning that I would shoot him." Kirn then "raised both hands out to the side and dropped what [Officer Keightley] could then see was a shotgun."

¶6    Kirn dropped the shotgun in a chair, but still within his reach. The officers shouted at Kirn to move away, but Kirn did not move. Officer Keightley then deployed his taser at Kirn. Kirn immediately fell to the ground and was handcuffed by Officer Dierenfield. After Kirn was apprehended, Officer Dierenfield checked the shotgun and found it was loaded.

¶7    Kirn was subsequently charged with two felony counts of assault on a peace officer by causing reasonable apprehension of serious bodily injury by use of a weapon. The matter proceeded to a jury trial. At the close of the State's case, Kirn moved to dismiss the case for lack of sufficient evidence. His motion was denied, and Kirn was convicted. Kirn timely appeals the denial of his motion to dismiss for lack of sufficient evidence.

## STANDARD OF REVIEW

3

¶8     We review the denial of a motion to dismiss for insufficient evidence (formerly a motion for directed verdict) de novo.[1] *State v. Swann*, 2007 MT 126, ¶¶ 17, 19, 337 Mont. 326, 160 P.3d 511; *State v. Skinner*, 2007 MT 175, ¶ 14, 338 Mont. 197, 163 P.3d 399; *State v. McWilliams*, 2008 MT 59, ¶ 37, 341 Mont. 517, 178 P.3d 121; *State v. Rosling*, 2008 MT 62, ¶ 33, 342 Mont. 1, 180 P.3d 1102; *State v. Hill*, 2008 MT 260, ¶ 20, 345 Mont. 95, 189 P.3d 1201.

## DISCUSSION

¶9     Section 46-16-403, MCA, provides:

> When, at the close of the prosecution's evidence or at the close of all the evidence, the evidence is insufficient to support a finding or verdict of guilty, the court may, on its own motion or on the motion of the defendant, dismiss the action and discharge the defendant. However, prior to dismissal, the court may allow the case to be reopened for good cause shown.

¶10    Granting a motion to dismiss for insufficient evidence "is only appropriate if, viewing the evidence in a light most favorable to the prosecution, there is no evidence upon which a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Hill*, ¶ 20.

¶11    Kirn was charged under § 45-5-210(1)(b), MCA, which provides "[a] person commits the offense of assault on a peace officer or judicial officer if the person purposely or

---

[1] The State asserts the standard of review is for an abuse of discretion, citing *Swann*. *Swann* actually overruled our previous cases using the abuse of discretion standard, and adopted the de novo standard of review in cases involving the denial of a motion to dismiss for insufficient evidence. See our discussion in *Swann*, ¶¶ 16-19. Our seemingly contradictory statement in *State v. Coluccio*, 2009 MT 273, ¶ 16, 352 Mont. 122, 214 P.3d 1282 ("we review a district court's denial of a motion to dismiss for insufficient evidence de novo if the court based its denial on a conclusion of law."), is overruled to the extent that it conflicts with our holding in *Swann* and its progeny. We clarify again that "for all denials of motions for directed verdict, the proper standard of review is not abuse of discretion, but de novo." *Swann*, ¶ 17.

knowingly causes . . . reasonable apprehension of serious bodily injury in a peace officer or judicial officer by use of a weapon[.]"

¶12 Kirn argues that Officers Keightley and Dierenfield could not have had reasonable apprehension of serious bodily injury by use of a weapon because the officers did not see the shotgun until Kirn dropped it in the chair. Therefore, Kirn argues the State did not present sufficient evidence for the jury to convict him. Stated another way, Kirn argues there was not sufficient evidence to prove reasonable apprehension of serious bodily injury, an essential element of the charge.

¶13 The State argues that Montana law is clear that a person need not actually see a weapon to feel threatened by the use of that weapon, and with that in mind, the State presented ample evidence to convict.

¶14 We have held numerous times that it is not necessary that the victim personally observe a weapon in order to experience reasonable apprehension of serious bodily injury by use of that weapon. *Swann*, ¶ 27; *State v. Steele*, 2004 MT 275, ¶ 33, 323 Mont. 204, 99 P.3d 210; *State v. Hagberg*, 277 Mont. 33, 40-41, 920 P.2d 86, 90 (1996); *State v. Misner*, 234 Mont. 215, 219, 763 P.2d 23, 25 (1988). Kirn's attempt to factually distinguish these cases in unpersuasive.

¶15 The circumstances of Officer Keightley's and Officer Dierenfield's interaction with Kirn show they faced an unpredictable situation with an angry, belligerent man. The situation escalated from simply talking with Kirn about his television volume, to Kirn making physical contact with Officer Keightley. Then, Kirn made what the officers

perceived as a threatening comment and retreated to a bedroom. Officer Keightley testified that he felt Kirn left to get a gun. Officer Keightley also told Officer Dierenfield, "he's going to get something, I think it's a gun." Both officers unequivocally testified that they were scared and concerned for their lives. Kirn returned, standing in a "bladed stance" with his right hand obscured and refused to follow the officers' command to show his hands. When he finally obeyed the officers' commands, their fears proved correct – Kirn had left to get a gun, a shotgun he dropped in a chair nearby.

¶16 We conclude under these circumstances that the State presented sufficient evidence upon which a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. As we held in *Swann*, *Steele*, *Hagberg*, and *Misner*, Officers Keightley and Dierenfield did not have to personally see the weapon in order to experience reasonable apprehension of serious bodily injury. The District Court did not err in denying Kirn's motion to dismiss for insufficient evidence.

## CONCLUSION

¶17 For the reasons stated above, we affirm.

/S/ MICHAEL E WHEAT

We Concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ BETH BAKER
/S/ JIM RICE

6