[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-11147

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

WILLIAM JAMES GILCHRIST,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 5:21-cr-00034-TKW-MJF-1

_____

Before ROSENBAUM, JILL PRYOR, and LAGOA, Circuit Judges.

PER CURIAM:

William James Gilchrist appeals his 96-month sentence for assault with a dangerous weapon with intent to do bodily harm, in a federal correctional institution, in violation of 18 U.S.C. § 113(a)(3). On appeal, Gilchrist argues that the district court erred in finding that his Montana conviction for assault on a peace officer was a predicate crime of violence for the career-offender enhancement under U.S.S.G. § 4B1.2(a). Gilchrist also argues that the district court erred by imposing a five-level enhancement to his offense level based on U.S.S.G. § 2A2.2(b)(3)(B) because the victim's injuries in the instant case were not "serious bodily injuries," but rather were "bodily injuries" pursuant to U.S.S.G. § 2A2.2(b)(3)(A). For the following reasons, we affirm.

## I.

In November 2021, a grand jury charged Gilchrist with one count of assault with a dangerous weapon, with intent to do bodily harm, in a federal correctional institution, in violation of 18 U.S.C. § 113(a)(3) ("Count One"), and one count of knowingly making, possessing, or obtaining a prohibited object, as defined in 18 U.S.C. § 1791(d)(1)(B), while being an inmate of a prison, in violation of 18 U.S.C. § 1791(a)(2) and (b)(3) ("Count Two"). Pursuant to a written plea agreement, Gilchrist pled guilty to Count One in

exchange for the government moving to dismiss Count Two at sentencing.

The presentence investigation report ("PSI") described the following offense conduct. Gilchrist was serving a federal sentence at the Federal Correctional Institution-Marianna, in Jackson County, Florida. Video recordings show that, on July 30, 2021, Gilchrist waited until inmate G.C. emerged from the shower, and then struck him multiple times with a homemade weapon, a six-inch object sharpened to a point on one end, while G.C. tried to block the blows and fell to the floor. A Federal Bureau of Prisons officer responded and directed Gilchrist to drop the weapon, and Gilchrist discarded the weapon.

In setting forth his criminal history, the PSI included, in relevant part, Gilchrist's prior 2012 conviction for assault of a peace officer under Montana law. While Gilchrist was in the Reintegrating Youthful Offenders correctional facility in Montana, he became agitated and refused to return to his cell when requested to do so. Gilchrist then ripped a metal faucet off of a sink and swung it in a threatening manner. After refusing to drop the weapon, and causing damage to a door, a filing cabinet, and a mounted hand sanitizer dispenser, Gilchrest tore another hand sanitizer dispenser off the wall and threw it, striking a Juvenile Correctional Officer ("JCO") in the abdomen. Another JCO attempted to place Gilchrist in a primary restraint technique, and Gilchrist struck the right side of the JCO's head and shoulder several times with the broken faucet.

Gilchrest also injured two other non-JCO staff members in this incident.

The PSI noted that Gilchrist's initial base offense level was 14, pursuant to U.S.S.G. § 2A2.2(a). He received a four-level increase under U.S.S.G. § 2A2.2(b)(2)(B) because he used a deadly weapon. He also received a five-level increase under § 2A2.2(b)(3)(B) because G.C. sustained serious bodily injury. Gilchrest thus had a total adjusted offense level of 23. The PSI also noted that Gilchrist qualified as a career offender under U.S.S.G. § 4B1.1(b)(5), carrying an enhanced base offense level of 24, because Gilchrist was at least eighteen years old at the time of the offense of conviction, the offense was a felony that was a crime of violence, and he had at least two prior felony convictions for a crimes of violence—the assault of the JCO in 2012 and a kidnapping conviction in 2016. Gilchrist then received a three-level decrease under U.S.S.G. § 3E1.1(a) and (b), respectively, for clearly demonstrating acceptance of responsibility, and for assisting authorities in the prosecution of his own misconduct by timely notifying them of his intention to enter a guilty plea, bringing his total offense level to 21.

Gilchrist had seven criminal-history points, which normally would result in a criminal history category of IV, but because of his career-offender status, his criminal history category became VI. His sentencing guidelines imprisonment range was 77 to 96 months, with a statutory maximum of 10 years under 18 U.S.C. § 113(a)(3). Further, because the instant offense was committed

while Gilchrist was imprisoned, his sentence for the instant offense would be imposed to run consecutively to his undischarged term of imprisonment, pursuant to U.S.S.G. § 5G1.3.

Gilchrest objected to the PSI's increase under § 2A2.2(b)(3)(C) for permanent or life-threatening bodily injury as well as the determination that his Montana Assault on a Peace Officer conviction was a crime of violence and, thus, a career-offender predicate offense.

At sentencing, the district court first discussed the five-point "serious bodily injury" enhancement in § 2A2.2(b)(3)(B) versus a three-point "bodily injury" enhancement in § 2A2.2(b)(3)(A). After hearing the parties' arguments and looking through the medical records of the victim, the district court found that the definition of "serious bodily injury" involved either extreme physical pain, the protracted impairment of a function, or requiring medical intervention such as surgery. The district court noted that the victim's broken nose was enough for the court to find extreme physical pain and overruled Gilchrest's objection.

Turning to the career-offender enhancement, the district court stated that it had reviewed the circumstances of the Montana cases interpreting the statute and concluded that there needed to be at least an implicit threat, made by the defendant and perceived by the officer, that the defendant was going to cause harm or serious bodily injury through the use of a weapon, even if the officer did not see the weapon but reasonably deduced that a weapon was present. The court found that the statute at issue—Montana Code

§ 45-5-210(1)(b)— fit within the definition of "crime of violence," such that the career-offender designation was appropriate, because the statute required, at minimum, a threat to use force that creates reasonable apprehension.

The district court found that a top-end guidelines sentence was appropriate, and sentenced Gilchrist to a 96-month sentence, to be served consecutively to his current sentence. While noting that, had Gilchrist not met the career-offender requirements, his guideline range would have been much lower at 51 to 63 months, the district court found this range would not have taken into account the circumstances and seriousness of his prior offenses. The district court then explicitly stated that the sentence it was going to impose would have been the same in order to take into consideration things that were not part of the guidelines calculation. The district court focused on the violence involved in the instant offense and Gilchrist's prior history—specifically, the fact that it appeared that Gilchrist's custodial sentences had not deterred him from violent conduct while in custody. The district court also found that there was no apparent motive in this case, which aggravated the violent nature of this case, and that the sentence needed to deter not only Gilchrist, but also others in the prison environment from taking matters into their own hands, and to help them understand that consequences for these kinds of actions would be serious. And the district court again clarified that its sentence would not have changed even if Gilchrist were not a career

offender, and even if the serious-bodily-injury objection had been sustained.

This appeal ensued.

## II.

We review *de novo* whether the defendant's prior conviction qualifies as a "crime of violence" under the United States Sentencing Guidelines. *United States v. Dixon*, 874 F.3d 678, 680 (11th Cir. 2017). A district court's error in calculating the guidelines range warrants vacating the sentence, unless the error was harmless. *United States v. Barner*, 572 F.3d 1239, 1247 (11th Cir. 2009). To determine the substantive reasonableness of a sentence, we consider the totality of the circumstances under a deferential abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 51 (2007). This district court abuses its discretion when it "(1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors." *United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (en banc) (quoting *United States v. Campa*, 459 F.3d 1121, 1174 (11th Cir. 2006) (en banc)). The party challenging the sentence bears the burden of establishing that it is unreasonable based on the facts of the case and the 18 U.S.C. § 3553(a) factors. *United States v. Tome*, 611 F.3d 1371, 1378 (11th Cir. 2010).

Remand based on a district court's guidelines error is not appropriate when the error did not impact the district court's

sentence and the ultimate sentence is substantively reasonable. *United States v. Keene*, 470 F.3d 1347, 1349–50 (11th Cir. 2006). If the district court states that its sentence would not have changed with a different guidelines calculation, we assume there was an error, calculate the guideline range without the error, and analyze whether the sentence would be substantively reasonable under that guideline range, considering the § 3553(a) factors. *Id.* at 1349–50. The § 3553(a) factors that the district court must consider include: the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences available; the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines; any pertinent policy statements; the need to avoid unwarranted sentencing disparities; and the need to provide restitution to any victims of the offense. 18 U.S.C. §§ 3553(a)(1), (a)(2)(B)–(D), (a)(3), (a)(4)(a), (a)(5)–(7). Further, while a district court must evaluate all the of § 3553(a) factors, the weight accorded to each factor is within its sound discretion. *United States v. Ramirez-Gonzalez*, 755 F.3d 1267, 1272–73 (11th Cir. 2014).

As to the career-offender enhancement, § 4B1.1 of the Sentencing Guidelines provides that:

> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a).  Further, § 4B1.2(a) of the Sentencing Guidelines defines a "crime of violence" as:

> any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that–
>
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2) is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c).

U.S.S.G. § 4B1.2(a)(1)–(2).

Courts use the categorical approach to determine whether an indivisible statute, i.e., when a statute defines a single crime only with a single set of elements, qualifies as a crime of violence under U.S.S.G. § 4B1.2(a). *See Mathis v. United States*, 579 U.S. 500, 504–

05 (2016). Instead of focusing on the specific facts underlying the crime of conviction, we consider whether the prior conviction has an element of "use, attempted used, or threatened use of physical force against the person of another." *See id.* (noting that courts focus solely on whether the elements of the crime of conviction sufficiently match the elements of the generic offense, while ignoring the particular facts of the case); U.S.S.G. § 4B1.2(a)(1). Physical force "means *violent* force—that is, force capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 140 (2010) (emphasis in original). "If any—even the least culpable—of the acts criminalized do not entail that kind of force, the statute of conviction does not categorically match the federal standard" and, therefore, cannot serve a predicate for the career-offender enhancement. *Borden v. United States*, 141 S. Ct. 1817, 1822 (2021) (applying the categorical approach in a case involving the Armed Career Criminal Act).

For offenses under state law, we are bound by a state court's interpretation of state law, including its determination of the elements of a crime under state law. *Johnson*, 559 U.S. at 138. The version of Montana Code § 45-5-210(1) in effect at the time of Gilchrist's prior offense provided that:

> (1) A person commits the offense of assault on a peace officer or judicial officer if the person purposely or knowingly causes:
>
> (a) bodily injury to a peace officer or judicial officer;

(b) reasonable apprehension of serious bodily injury in a peace officer or judicial officer by use of a weapon;

(c) bodily injury to a peace officer or judicial officer with a weapon; or

(d) serious bodily injury to a peace officer or judicial officer.

Mont. Code Ann. § 45-5-210(1) (2011). The least culpable act criminalized is § 45-5-210(1)(b), as all other subsections involve an actual injury, while subsection (b) involves only "reasonable apprehension" of an injury. *See id.* "Weapon" is defined under Montana law as "an instrument, article, or substance that, regardless of its primary function, is readily capable of being used to produce death or serious bodily injury." *Id.* § 45-2-101(79) (2011).

The Supreme Court of Montana has interpreted section 45-5-210 primarily in sufficiency-of-the-evidence cases. In *State v. Kirn*, 274 P.3d 746 (Mont. 2012), the Supreme Court of Montana noted that it has held "numerous times that it is not necessary that the victim personally observe a weapon in order to experience reasonable apprehension of serious bodily injury by use of that weapon." *Id.* at 748 (citations omitted). In *Kirn*, the officers responded to a noise complaint and were greeted by Kirn, who was described as "very agitated, very animated, belligerent and frankly, came to the door on the fight." *Id.* at 747. As the officers moved into the apartment, Kirn tried to push one of them out the apartment and then went into his bedroom, reappeared in a stance that

showed his left side while obscuring his right hand. *Id.* Both officers believed Kirn walked away to get a gun and were scared. *Id.* In response to the officers drawing their weapons, Kirn raised both hands and dropped a shotgun into a chair that was still within his reach. *Id.* Kirn argued that the officers could not have had reasonable apprehension of serious bodily injury by use of a weapon because they did not see the shotgun until he dropped it, but the Montana Supreme Court concluded that, under the circumstances, where the officers faced an unpredictable situation with a belligerent man, there was sufficient evidence to convict Kirn under section 45-5-210(1)(b). *Id.* at 748.

Additionally, the Supreme Court of Montana has interpreted other statutes that use the same language. In *State v. Hagberg*, 920 P. 2d 86 (Mont. 1996), the court analyzed whether the facts of the case failed to state a crime under Montana Code § 45-5-202, which provides that "[a] person commits the offense of felony assault if he purposely or knowingly causes . . . (b) reasonable apprehension of serious bodily injury in another by use of a weapon." *Id.* at 89–90 (quoting Mont. Code Ann. § 45-5-202). In that case, police officers responded to a call from restaurant employees who heard yelling and banging coming from Hagberg's and his wife's truck. *Id.* at 88. The couple drove away but were pulled over by an officer, who noticed there was an empty gun holster on the seat between the couple. *Id.* The officer looked at Hagberg, who smelled like alcohol and was bent over with his arms between his legs and his hands by the floor, and noticed that he had

a glazed look on his face that "spooked" the officer. *Id.* After other officers arrived, the officer approached the car again, opened the door, and asked Hagberg to step out. *Id.* Hagberg reacted by trying to close the car door on the officer's shoulder while keeping his other hand between his knees. *Id.* The officer grabbed Hagberg, spun him out of the car, and brought him to the ground, after which he saw that Hagberg had a loaded revolver in his hand. *Id.* The officer then grabbed the revolver's hammer to prevent the gun from discharging. *Id.* The Supreme Court of Montana held that it is not necessary that a victim personally observe a weapon for a defendant to be charged with a violation of section 45-5-202. *See id.* at 90. Turning to the facts of the case, the court found that the officer had reason to be apprehensive of serious bodily injury because the officer observed that Hagberg smelled of alcohol, sounded belligerent and had a "glazed look on his face," that there was an empty holster on the seat of the car, and that Hagberg looked as if he was holding a gun out of the officer's sight, were sufficient to affirm Hagberg's conviction for felony assault. *Id.* at 90.

Similarly, in *State v. Smith*, 95 P.3d 137 (Mont. 2004), the Supreme Court of Montana, in the context of a case involving a defendant convicted of assault with a weapon under Montana Code § 45-5-213, addressed whether the victim must "see" the weapon as an element of that crime. *Id.* at 141. That statute similarly makes it a crime to cause "reasonable apprehension of serious bodily injury in another by use of a weapon or what reasonably

appears to be a weapon." *Id.* at 140. After reviewing its precedent, including cases interpreting the "nearly identical" section 45-5-202, the Supreme Court of Montana held that "it is not technically correct that 'use of a weapon' (or, presumably, what appears to the victim to be a weapon) is a requisite element of the offense." *Id.* at 143. In doing so, the court noted that the caselaw permitted two different applications of the language in section 45-5-213(b): (1) the crime is committed if a person uses a weapon or what reasonably appears to be a weapon to cause reasonable apprehension of serious bodily injury in the victim; and (2) where a person causes reasonable apprehension that the victim will sustain serious bodily injury from a weapon, if it reasonably appears to the victim that a weapon is involved, whether actually seen or not. *Id.* at 141–43.

Here, we conclude that any alleged error in the district court's application of the career-offender enhancement under U.S.S.G. § 4B1.1 was harmless. The district court explained that, had the career-offender enhancement not been applied, Gilchrest's guidelines range would have been 51 to 63 months, but indicated that it would have imposed the same sentence on Gilchrist if it had not applied the enhancement. In doing so, the court focused on Gilchrest's prior history of violence—in particular, his violence in custody—and the need for deterrence, aligning with the § 3553(a) factors of the history and characteristics of the defendant, the need for the sentence to reflect the seriousness of the offense, and the need to provide adequate deterrence to the criminal conduct. It was within the district court's discretion to weigh Gilchrest's

history of violence and the need for deterrence in this case, and we conclude that Gilchrist's sentence is substantively reasonable. Further, notwithstanding the district court's statement, the court did not err in sentencing him as a career offender because his Montana conviction for Assault of a Peace Officer was a "crime of violence," and, therefore, a predicate offense for the career-offender enhancement under § 4B1.1.

Accordingly, we affirm as to this issue.

### III.

We review for clear error a district court's determination that a victim's injuries meet the threshold for a bodily-injury enhancement. *See United States v. Torrealba*, 339 F.3d 1238, 1242, 1246 (11th Cir. 2003) (holding that the district court did not clearly err in determining that the victim's injuries were permanent or life-threatening under U.S.S.G. § 2A4.1(b)(2)(A), which is the guidelines provision governing injuries sustained during kidnapping offenses and which uses the same definitions in U.S.S.G. § 1B1.1 that govern assault offenses). We will reverse for clear error only where we are left with a definite and firm conviction that a mistake was committed. *United States v. Rothenberg*, 610 F.3d 621, 624 (11th Cir. 2010). Further, we may affirm for any reason supported by the record, even if that reason was not relied upon by the district court. *United States v. Chitwood*, 676 F.3d 971, 975 (11th Cir. 2012).

Where a defendant objects to a factual finding that is used to calculate his guideline range, the government bears the burden of

establishing the disputed fact by a preponderance of the evidence. *United States v. Rodriguez*, 398 F.3d 1291, 1296 (11th Cir. 2005). "The preponderance of evidence is a relaxed evidentiary standard, however, it does not grant the court a license to sentence a defendant in the absence of sufficient evidence when that defendant has properly objected to a factual conclusion." *United States v. Agis-Meza*, 99 F.3d 1052, 1055 (11th Cir. 1996).

The Sentencing Guidelines provide that, if the victim of an assault sustained bodily injury, the offense level is increased according to the seriousness of the injury. U.S.S.G. § 2A2.2(b)(3). "Bodily injury" is defined as "any significant injury; e.g., an injury that is painful and obvious, or is of a type for which medical attention ordinarily would be sought." U.S.S.G. § 1B1.1, cmt. n.1(B). "Serious bodily injury" is defined as an "injury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation." *Id.* cmt. n.1(M). If the victim sustains "bodily injury," three levels are added to the base offense level, and if the victim sustains "serious bodily injury," five levels are added. U.S.S.G. § 2A2.2(b)(3)(A)–(B).

First, we conclude that any alleged error in the district court's application of § 2A2.2(b)(3)(B) was harmless because the court stated that it would have sentenced Gilchrist the same had it not applied that five-level enhancement, and Gilchrist's sentence is substantively reasonable for the reasons discussed above. Even disregarding the district court's statement, however, the court did not

clearly err in applying § 2A2.2(b)(3)(B).  Under the preponderance-of-the-evidence standard, the district court, after reviewing the victim's medical records, did not clearly err in finding that the victim suffered "serious bodily injury," rather than just "bodily injury," based on the victim's broken nose.  Further, we note that, even though the district court did not rely on these injuries in its finding, the victim reportedly lost consciousness and was found "incoherent" and "covered in blood," from the stab lacerations he received from Gilchrist.  Based on this record, the district court did not clearly err in finding that the victim suffered "serious bodily injury."

Accordingly, we affirm as to this issue.

## IV.

For the reasons stated, we affirm Gilchrest's sentence.

**AFFIRMED.**