FILED

06/11/2024

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 22-0523

DA 22-0523

IN THE SUPREME COURT OF THE STATE OF MONTANA

2024 MT 126N

STATE OF MONTANA,

    Plaintiff and Appellee,

    v.

MICHAEL VOYLES,

    Defendant and Appellant.

APPEAL FROM:   District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DC 21-0044
Honorable Ashley Harada, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

    Clark R. Ramsey, Ramsey Law, PLLC, Billings, Montana

    For Appellee:

    Austin Knudsen, Montana Attorney General, Roy Brown, Assistant
Attorney General, Helena, Montana

    Scott D. Twito, Yellowstone County Attorney, Sarah Hyde, John
Ryan, Deputy County Attorneys, Billings, Montana

Submitted on Briefs: April 3, 2024
Decided: June 11, 2024

Filed:

_____
Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1    Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent.  Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2    Michael Voyles appeals from his April 21, 2022, jury conviction of three counts of Sexual Intercourse Without Consent (SIWOC) pursuant to § 45-5-503(1) and (3)(a), MCA. We affirm.

¶3    In August 2020, K.L., then 24 years old, saw a photo on social media and decided to call the police.  The photo depicted Voyles in front of a charter bus with a group of children.  K.L. decided to tell the police his story of sexual abuse at the hands of Voyles so that no other children would have to go through the same thing he did.  K.L. described that sometime between 2006 and 2010, Voyles had "performed oral sex on [him] multiple times" at Voyles's home.  K.L. was between 10 and 14 years old on these occasions.

¶4    The State charged Voyles with three counts of SIWOC, stating in each count that between August 2006 and August 2010, Voyles knowingly had sexual intercourse with K.L., a minor, by performing oral sex on him while Voyles was three or more years older, all in Yellowstone County.  The charges went to a three-day jury trial.  Although each count was charged identically, the jury was instructed that "[e]ach count charges a distinct offense.  You must decide each count separately.  The Defendant may be found guilty or

2

not guilty of any or all of the offenses charged. Your finding as to each count must be stated in a separate verdict." Jury Instructions 21 through 23 instructed the jury as to the elements that the State must prove beyond a reasonable doubt for the jury to find Voyles guilty, including that "[t]he Defendant had sexual intercourse with K.L. (and on a date different that COUNT II and COUNT III with all of you agreeing as to that event between August, 2006 and August, 2010)." The instructions for Count II and Count III were identical except that the instructions delineated and excluded the other counts. The jury found Voyles guilty on all three charges. Voyles appeals.

¶5     Voyles argues that the above given instructions deprived him of a unanimous verdict because the jury was not instructed that it must unanimously agree on a separate specific act for each charged offense. Voyles argues that we should find ineffective assistance of counsel for his counsel's failure to request a model jury instruction for unanimity or, in the alternative, we should reverse under plain error.

¶6     In reviewing jury instructions, we ask "whether the instructions, as a whole, fully and fairly instruct the jury on the law applicable to the case." *State v. Weaver*, 1998 MT 167, ¶ 28, 290 Mont. 58, 964 P.2d 713. To prevail on an ineffective assistance of counsel claim, Voyles must both overcome a presumption that his counsel's conduct fell within a range of acceptable conduct by showing errors so serious that counsel was not functioning as required under the Sixth Amendment and, if so, that that conduct prejudiced him. *Oliphant v. State*, 2023 MT 43, ¶¶ 29, 37, 411 Mont. 250, 525 P.3d 1214. At our discretion, we rarely review a claimed error under plain error review when a party has not preserved the error for appeal. *State v. Favel*, 2015 MT 336, ¶¶ 23, 27, 381 Mont. 472, 362 P.3d

1126. To invoke our plain error review, the appealing party must (1) show the claimed error implicates a fundamental right, and (2) firmly convince this Court that failure to review the claimed error will result in a manifest miscarriage of justice, leave unsettled the question of the fundamental fairness of the proceedings, or compromise the integrity of the judicial process. *Favel*, ¶ 23.

¶7 Although Voyles's counsel did not request, and the District Court did not provide, the model jury instruction for unanimity, the instructions agreed upon and given to the jury made clear in this case that the jury had to unanimously find Voyles guilty of a specific, separate act under each count. Instruction 17 guaranteed the jury knew that each count charged a "distinct offense" and Instructions 21 through 23 guaranteed that the jury only found Voyles guilty of all three charges if they unanimously agreed that each offense occurred on a different date and only if "all of you agree[] as to that event." We cannot find counsel's performance deficient for failing to request the model jury instruction when the given instructions clearly instruct the jury to all agree on the same, distinct event for each count.

¶8 Nor do we find that plain error review is warranted here. The instructions were clear, and "[w]e presume the jury followed these instructions." *State v. Smith*, 2021 MT 148, ¶ 49, 404 Mont. 245, 488 P.3d 531. Voyles has not shown that the jury instructions affected his right to a unanimous verdict. The instructions clearly stated that the jury needed to be unanimous for each count, and that they must unanimously agree that each count was for a single instance on different days than the other counts.

¶9 The only issue Voyles argues is that the jury sent a question during deliberations asking to "specify the specific sexual encounter related to each count." The court answered that they should refer to the jury instructions which stated that each count could be any of the acts but that the jury had to be unanimous on which act it was and that each count had to be a different act. This is distinct from *Weaver*, where multiple acts were charged under a single count such that if half the jury thought the defendant had committed one act but not another and vice versa, they could still find him guilty. Here, the State charged three distinct acts of SIWOC and asked the jury to find Voyles guilty of all three. It did not matter that a specific act related to a specific charge as long as the jury was unanimous that he was guilty of each count. *Weaver*, ¶ 39. We cannot conclude that failing to review the claimed error would result in a manifest miscarriage of justice, leave unsettled a question of the fundamental fairness of the proceeding, or compromise the integrity of the judicial process. *Smith*, ¶ 50.

¶10 Voyles next argues that the prosecutor made several improper comments that prejudiced his right to a fair trial. Some of these comments were not objected to at trial and Voyles asks us to review them under plain error. The State concedes some of the comments were improper but argues they did not prejudice Voyles. Voyles also asks us to review the statements together under the cumulative error doctrine.

¶11 We do not undertake a full analysis of an alleged error each time a party requests plain error review. *State v. Griffin*, 2016 MT 231, ¶ 7, 385 Mont. 1, 386 P.3d 559. To conduct a full analysis to determine whether to find plain error would defeat the underlying rule that a party must object to error at trial because errors should be brought to the attention

5

of a trial court where they can be initially addressed. *Griffin*, ¶ 7. A defendant has the burden of showing (1) that a comment was improper and (2) the comment, in context of the entire case, prejudiced his right to a fair trial. *State v. Palafox*, 2023 MT 26, ¶ 27, 411 Mont. 233, 524 P.3d 461.

¶12 At trial, Voyles presented numerous witnesses to testify on his good character, some of whom testified that they had never heard of anything inappropriate happening between Voyles and children, and some "now adults who were children" when Voyles befriended them testified that Voyles never sexually abused them. Outside of the presence of the jury, the State and defense agreed that the State would be able to ask defense witnesses whether their opinion would change if they knew about past charges of sexual misconduct and other alleged victims who have come forward but did not want to testify. Both parties agreed to a limiting instruction that was given to the jury both before and after the witness testimony, which instructed the jury to only consider the questions to test the basis of the witnesses' opinions.

¶13 On cross-examination, the State tested the basis of the character witness testimony by asking if their opinion would change if they knew about prior charges of sexual misconduct. After two witnesses hesitated, the prosecutor clarified the question by asking: "If I'm telling you that [the charges] are true as an officer of this Court, you still can't tell us if your opinion changes?" No objection was made.

¶14 The State concedes that the prosecutor should not have framed the question that way. Nevertheless, we decline to invoke plain error review. Voyles admits in briefing that the questions merely described that he had been charged rather than stating the underlying

6

factual basis for the charges were true.  The jury knew that these charges were dismissed.

Significantly, the jury was repeatedly instructed not to use that information for any purpose

but to evaluate the basis of character witness opinions.

¶15     Voyles opened the door to the cross examinations by bringing up numerous

character witnesses to testify about his good character.  "When the accused presents

evidence . . . of his good character in general, he opens the door to all legitimate

cross-examination and must, therefore, accept the consequences which result."  *State v.

Reinert*, 2018 MT 111, ¶ 33, 391 Mont. 263, 419 P.3d 662.  Voyles has not demonstrated

that failing to address the claimed errors would leave unsettled the question of the

underlying fairness of the trial.  *Palafox*, ¶ 28.

¶16     Voyles argues other questions were designed as statements rather than questions.

During cross examination of a character witness, the prosecutor got into a rhythm of asking

the witness if his opinion would change if he knew about different rumors or charges.  At

two points, the questions dropped a "tagline"[1] and thus, in a transcript, became more like

statements than questions.   Voyles did not object to the phrasing of either of these

questions.  Dropping taglines is a common cross-examination technique once an attorney

has gotten the witness into a rhythm of answering questions.  *See, e.g.*, Charles H. Rose III,

*Fundamental Trial Advocacy* ch. 6, 122–23 (2007).  Changing one's voice inflection at the

end of a statement can make it clear that the statement is intended as a question to the

witness, even without a tagline, and "[j]udges understand both the right and the sound of a

---

[1] A tagline is a word or phrase added at the end of a statement that makes it into a question.  For example, on cross-examination, an attorney might ask: "the light was red; *right*?"

leading question." *Cross-Examination: Science and Techniques*, Third Edition § 30.07 (LexisNexis). As with witnesses, the District Court is in the best position to hear and determine whether a line of questioning has strayed into an attorney impermissibly putting facts into the record. Without any objection or input from the District Court on how these questions were perceived in the courtroom, we decline to review them on plain error review.

¶17 At another point, while wrapping up a different cross examination of a character witness, the prosecutor asked if the witness's opinion would change if he knew of a certain fact. The witness answered "No. Nothing has ever happened to me." The prosecutor finished with "Well, you're one of the lucky ones. Thank you." Defense moved to have the statement stricken, which the District Court never ruled on. While the State properly concedes that this remark at the end of cross was improper, and while the District Court should have stricken it at defense counsel's motion, Voyles fails to show here how that remark prejudiced him. Voyles makes no argument that this single remark prejudiced him but rather that all of the allegedly improper comments taken together prejudiced him. While we conclude this was an improper statement, Voyles has not met his burden to show that it prejudiced him as, taken in the context of the whole trial and the jury instructions on the defendant's character, this was a "very brief deviation[]" which did not create a clear danger that jurors adopted a different view than their own independent judgment provided. *State v. Wells*, 2021 MT 103, ¶¶ 27–28, 404 Mont. 105, 485 P.3d 1220.

¶18 We have reviewed the remaining prosecutorial comments Voyles alleges were improper in context and decline to exercise plain error review of them as our review does

8

not show a manifest miscarriage of justice, leave unsettled a question of the fundamental fairness of the proceeding, or compromise the integrity of the judicial process.

¶19 The cumulative error doctrine mandates reversal when numerous errors taken together have prejudiced a defendant's right to a fair trial. *State v. Cunningham*, 2018 MT 56, ¶ 32, 390 Mont. 408, 414 P.3d 289. The doctrine rarely merits reversal. *Cunningham*, ¶ 33. Reversal is not warranted here.

¶20 Finally, Voyles argues that the District Court erred when it denied Voyles's motion to dismiss for insufficient evidence. We review a denial of a motion to dismiss for insufficient evidence de novo. *State v. Kirn*, 2012 MT 69, ¶ 8, 364 Mont. 356, 274 P.3d 746. We will reverse only if, viewing the evidence in the light most favorable to the prosecution, there is no evidence upon which a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Kirn*, ¶ 10.

¶21 Voyles does not dispute the sufficiency of the evidence for two of the three SIWOC charges. Instead, Voyles argues the State provided no evidence that a third separate and specific act of SIWOC occurred. Voyles argues that the State's refreshing of K.L.'s memory on redirect, and the subsequent testimony of a third time Voyles put K.L.'s penis in his mouth, could only be seen by a rational trier of fact as a rehashing of one of the first two times discussed on direct. We disagree.

¶22 On direct examination, K.L. testified that he remembered three specific times when Voyles put K.L.'s penis in his mouth. The prosecutor asked him to talk about the events. The first one, he said, "started when I was sitting on his couch and watching a movie, I believe it was, and I caught a reflection of pornography -- or him watching pornography in

9

the reflection of his fish tank." He remembered saying something along the lines of "this is not right" and then he thinks Voyles stopped, they finished the movie, and he went home. K.L. then recounted another time where he watched pornography with Voyles and then eventually Voyles performed oral sex on him while masturbating. The third time that K.L. recalled, he could not remember how it started, but he remembered ending up "in the 69 position."

¶23 On cross-examination, counsel tested his memory as to three specific events within Yellowstone County. K.L. admitted it was hard to remember the specific events because he had repressed them but that there was a recording where he had discussed all three instances of sexual contact that he could remember with a detective. On redirect, the prosecutor refreshed K.L.'s recollection with the transcript of that interview. K.L. testified about the time when he had seen the reflection in the fish tank and recalled that Voyles had got down and "performed oral" on him. He then talked about a separate time it happened in the "69 position." K.L. then discussed the third time but could not remember if he had ejaculated or not.

¶24 On this record, taken in the light most favorable to the prosecution, we conclude that a rational trier of fact could conclude that there were three separate instances of SIWOC testified to at trial, all of which occurred in the appropriate timeframe and within Yellowstone County. The inquiry is "whether sufficient evidence exists to support the verdict, not whether the evidence could have supported a different result." *State v. Sheehan*, 2017 MT 185, ¶ 17, 388 Mont. 220, 399 P.3d 314.

¶25 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶26 Affirmed.

/S/ MIKE McGRATH

We Concur:

/S/ INGRID GUSTAFSON
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ JAMES JEREMIAH SHEA